**Onofrio TOCCO, Plaintiff,**

v.

**TIME, INC., a New York corporation, Defendant.**

**Paul Joseph TOCCO, Plaintiff,**

v.

**TIME, INC., a New York corporation, Defendant.**

**Peter TOCCO, Plaintiff,**

v.

**TIME, INC., a New York corporation, Defendant.**

**Philip J. TOCCO, Plaintiff,**

v.

**TIME, INC., a New York corporation, Defendant.**

**Civ. A. Nos. 19864–19867.**

United States District Court
E. D. Michigan, S. D.
June 22, 1961.

Philip J. Tocco, Wyandotte, Mich., for plaintiffs.

Selden S. Dickinson, R. William Rogers, Detroit, Mich., Harold R. Medina, Jr., New York City, of counsel, for defendant.

LEVIN, Chief Judge.

These four actions, which have been consolidated for hearing, are based upon the publication of material alleged to be libelous. A motion by the defendant for summary judgment is granted for the reasons here set out.

The alleged libel consisted of a reproduction in the February 23, 1959, issue of Life Magazine of a map picturing certain familial relationships which had originally been attached as an exhibit to the record of the hearings before the United States Senate's Select Committee on Improper Activities in the Labor or Management Field (the so-called McClellan Committee). Two of the plaintiffs were named in the map; the other two plaintiffs are members of their immediate family. The plaintiffs claim that in the context of the Life Magazine article, which was entitled "The Hoodlum Network," the public might assume that the individuals shown on the family map and their close relatives were "racketeering relatives." Jurisdiction is properly based upon diversity of citizenship.

The Michigan statute of limitations, 20 M.S.A. § 27.605, Comp.Laws 1948, § 609.13, the governing statute, Home Life Insurance Co. v. Elwell, 1897, 111 Mich. 689, 70 N.W. 334, and Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 1941, 313 U.S. 487, 61 S. Ct. 1020, 85 L.Ed. 1477, provides that a libel action must be brought within one year " * * * from the time the cause of action accrues and not afterwards." The actions were filed on February 19, 1960. The defendant claims that the actions accrued on or before February 18, 1959, and, in support, submitted affidavits disclosing the following uncontroverted facts: Life Magazine's articles are composed and edited by its employees in New York City. Thereafter, the contents are sent to Chicago, where plates are produced by R. H. Donnelley & Sons Com-

pany. One set of plates is utilized by that company to print copies of the magazine in Chicago, and another set is sent to Cuneo Eastern Press, Inc. in Philadelphia to print copies in that city. A third set of plates is cast by Pacific Press, Inc. in Los Angeles from a set of moulds and shells made by Donnelley. Pacific Press, Inc. prints the magazine for distribution to the western area of the country.

Plates for the issue of Life Magazine bearing the cover date of February 23, 1959, were made in Chicago on Sunday, February 15. On that day, a set of plates was shipped to the printers in Philadelphia, and a set of moulds and shells was flown to Pacific Press, Inc. in Los Angeles. Actual printing of the February 23 issue was commenced in Chicago on February 15, in the other two cities on February 16.

Beginning on February 16, subscription copies were mailed directly from the printers in the three cities, and magazines destined for newsstand distribution were transported by truck, air, and railway express to local distributors, who deliver the copies to the various retail outlets. By Wednesday, February 18, a substantial number of copies were on sale at newsstands in New York, Philadelphia, Boston, Cleveland, and Washington, D. C., as well as other cities. Approximately 16,000 copies were received in Detroit on that day for retail distribution. Deliveries in the Detroit area were made to two railroad terminal newsstands on Wednesday, February 18, and the remaining copies were placed on newsstands on the following day.

An action for libel "accrues" when the allegedly defamatory matter is "published." Ogden v. Association of United States Army, D.C.D.C.1959, 177 F.Supp. 498. The entire distribution of the allegedly libelous article may be viewed as one over-all "publication," resulting in a single cause of action, or the printing and sale of each copy could be considered a separate "publication," resulting in a multitude of causes of action, some of which are not barred by the one-year statute of limitations. The former concept, establishing a single cause of action, is known as the "single publication" rule, the latter, the "multiple publication" rule.

Although sometimes designated the common law rule, the "multiple publication" doctrine was first set forth in a civil libel case [1] in Duke of Brunswick v. Harmer, 14 Q.B. 185, 117 Eng.Rep. 75 (1849). In that action, a single sale of a newspaper from the offices of the defendant to an agent of the plaintiff seventeen years subsequent to the date of issuance of the newspaper was held to be a "publication," thereby precluding the barring of the action under the prevailing six-year statute of limitations. No rationale was given for the holding, and, indeed, the only *raison d'être* for the rule, apart from historical reasons, is that it prevents a malicious publisher from printing a minimum number of copies of a defamatory matter to allow the statute of limitations to commence, withholding the bulk until the statute has run its course, and then continuing his calumnious activity with immunity. Winrod v. McFadden Publications, Inc., D.C.N.D.Ill. 1945, 62 F.Supp. 249.[2] This justification, which might be realistic only in the publication of books, allows the most remote and bizarre possibility to fashion an artificial and burdensome doctrine, for it is evident that, under modern conditions of mass production and nation-wide distribution of newspapers, periodicals, and books, the "multiple publication" doc-

1. It was held in Rex v. Carlisle (K.B. 1819) 1 Chitty 451, that in a criminal libel every copy sold of the same libel was a separate "publication" and therefore constituted a separate offense.

2. On appeal, Winrod v. MacFadden Publications, Inc., 7 Cir., 1951, 187 F.2d 180, the Court of Appeals stated that by the holding of Winrod v. Time, Inc., 1948, 334 Ill.App. 59, 78 N.E.2d 708, which was decided subsequent to the District Court opinion, Illinois had adopted the "single publication" doctrine in the application of the statute of limitations.

trine would, in effect, destroy the statute of limitations as a statute of repose.[3]

To counter the obvious inequities of the "multiple publication" doctrine, some courts fashioned the "single publication" rule, which prevents the indefinite tolling of the statute of limitations by permitting only one separate action against each author or publisher of a particular newspaper, periodical, or book. Prosser, "Interstate Publication," 51 Mich.Law Rev. 959, 963 (1953); Gregoire v. G. P. Putnam's Sons, 1948, 298 N.Y. 119, 81 N.E. 2d 45. While a relatively small number of courts have had an opportunity to consider the merits of the "publication" doctrines, the trend of the decisions favors the "single publication" concept. In addition, seven states, as of November 1, 1960, have enacted the "Uniform Single Publication Act," which allows only one cause of action for libel upon a single edition of a newspaper, magazine, or book. 9C Uniform Laws Annotated, p. 171 (1960 Cum.Part p. 69).

No reported Michigan decision has considered the merits of the respective doctrines. A Michigan statute, 21 M.S.A. § 27.1374, Comp.Laws 1948, § 620.24, allows a defendant in a libel action to introduce in evidence the fact that the plaintiff previously recovered damages upon a libel substantially similar to that present before the court, but no reported case has interpreted this statute. It was held in Goodrow v. New York Times Co., 1934, 241 App.Div. 190, 271 N.Y.S. 855, affirmed 1935, 266 N.Y. 531, 195 N.E. 186, that a comparable provision, New York Civil Practice Act, § 338–a, referred to the introduction in evidence of judgments received in suits against other periodicals for publication of a similar libelous article. The New York statute did not preclude adoption in that state of the "single publication" rule because, as already mentioned, even under this doctrine, a libeled individual has a separate

cause of action against each writer or publisher of the defamatory material.

■ Not being controlled by Michigan authority, I feel free to state that the "single publication" doctrine with respect to the statute of limitations appears to be more reasonable, and I therefore adopt it.

■■ The question of what activity constitutes a "publication" has likewise not been determined by the Michigan courts. The plaintiffs argue that the cover date of the Life Magazine in question, February 23, 1959, governs as to the date of publication. However, "publication," in the law of libel, is a word of art and is distinguished from publication in the trade sense. McGlue v. Weekly Publications, Inc., D.C.Mass.1946, 63 F. Supp. 744; Cannon v. Time, Inc., D.C. S.D.N.Y.1939, 39 F.Supp. 660; annotation 1 A.L.R.2d 384, 387 (1948). Publication of a libel theoretically commences when the writing is communicated to a third person who comprehends its significance. See Prosser, "Interstate Publication," 51 Mich.Law Rev. 959, 961 (1953). However, under the "single publication" rule, courts have held that a "publication" occurs when the alleged libelous matter is mailed to subscribers or placed in the hands of common carriers for shipment to wholesale distributors, Backus v. Look, Inc., D.C.S.D.N.Y.1941, 39 F.Supp. 662, or when the periodicals are initially placed on sale to the public at newsstands in the forum state. Polchlopek v. American News Co., Inc., D.C. Mass.1947, 73 F.Supp. 309. It is unnecessary to specify the precise activity which constituted "publication" in these actions, since under any of the above legal criteria the "publication" occurred on or prior to February 18, 1959, more than one year prior to the filing of the actions in this Court.

It may appear somewhat harsh to bar the plaintiffs' actions because of the tech-

---

3. The statute of limitations for libel is strikingly short in all states, being only one year in nearly two-thirds of the states and never lengthier than three years. Note, 62 Harv.Law Rev. 1041, 1042 (1949); Leflar, "The Single Publication Rule," 25 Rocky Mt.Law Rev. 263, 265 (1953).

nical definition of "publication." For an interesting discussion of decisions illustrating the potential presence of a "trap" situation resulting from the equating of a magazine's cover date with the date of "publication," see Leflar, "The Single Publication Rule," 25 Rocky Mt.Law Rev. 263, 271–3 (1953). However, this Court is obliged to interpret strictly the mandate of the statute of limitations.

■ A question of republication is posed. The article in which the allegedly libelous family relationship map appeared was reprinted in the March 30, 1959, issue of Life International. However, the map itself and accompanying commentary were omitted. Under these circumstances, it appears that there was no republication of the alleged defamation within the statutory period.

■ The remaining questions dealing with conflict of laws present myriad conceptual difficulties. Despite barring of the actions in this state because of the expiration of the Michigan statute of limitations, may this Court, nevertheless, regard the actions as incorporating libels arising in other states. In other words, may the "single publication" doctrine cross a state line and bar an action arising in another state. Some courts have held that the "single publication" rule terminates at a state's boundary and does not preclude all actions arising from a multistate libel. See, for example, Hartmann v. Time, Inc., 3 Cir., 1948, 166 F. 2d 127, 1 A.L.R.2d 370, certiorari denied 1948, 334 U.S. 838, 68 S.Ct. 1495, 92 L. Ed. 1763.[4] If I were to follow this holding it would simply mean that, notwithstanding the adoption of the "single publication" rule, the forum state court would be required to hear part of a nation-wide defamation action. This would bring about a result inconsistent with the "single publication" rule. 1 Harper and James, "The Law of Torts," § 5.16 (1956); Note, 48 Col.Law Rev. 932 (1948). Putting it another way, by accepting Hartmann, this Court would be abnegating the doctrine that a forum's judicial door will not swing open to hear an action which is alive in the state where it arose but barred in the forum. Restatement, Conflict of Laws, § 603. Maki v. George R. Cooke Co., 6 Cir., 1942, 124 F.2d 663, 146 A.L.R. 1352, certiorari denied 1942, 316 U.S. 686, 62 S.Ct. 1274, 86 L.Ed. 1758, indicates that Michigan would follow the rule of the Restatement.

In view of the holding in these actions, it is unnecessary to discuss the other grounds of the defendant's motion for summary judgment.

An appropriate order granting the defendant's motion for summary judgment may be presented for signature.

4. For a discussion of this case and related problems, see Prosser, "Interstate Publication," 51 Mich.Law Rev. 959, 964– 71 (1953), and Leflar, "The Single Publication Rule," 25 Rocky Mt. Law Rev. 263, 269 (1953).