**Wilson W. CROOK, III, Plaintiff,**

v.

**Donald R. PEACOR, Wiiliam B. Simmons, Jr., Eric J. Essene, E. William Heinrich, Individually and in their official capacities, and The Mineralogical Society of America, a Foreign corporation, Jointly and Severally, Defendants.**

**Civ. A. No. 83–CV–6063–AA.**

United States District Court,
E.D. Michigan, S.D.

Jan. 31, 1984.

John K. Parker, George Bushnell, Jr., Southfield, Mich., for plaintiff.

Peter A. Davis, Ann Arbor, Mich., for Peacor, Essene, and Heinrich.

Henry J. Maher, Anthony J. Rusciano, Detroit, Mich., for Simmons.

Harold M. Provizer, David S. Lichtenstein, Southfield, Mich., for Mineralogical Society.

## MEMORANDUM OPINION

FEIKENS, Chief Judge.

Plaintiff sues certain University of Michigan professors and the publishers of a trade periodical alleging, *inter alia*, defamation, breach of contract, and breach of fiduciary relationship. Jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332. Defendant professors move for dismissal or summary judgment, a more definite statement, and a striking of portions of the complaint.

## I. BACKGROUND

In 1977, plaintiff Wilson Crook was a student at the University of Michigan studying for his masters degree in geology. As a condition for the award of his masters degree, Crook was required to complete a masters thesis. In April 1977, he submitted a thesis entitled "The Geology, Mineralogy and Geochemistry of the Rare-Earth Pegmatites, Llano and Burnet Counties, Texas." Crook's thesis was accepted by the department, and the school conferred a M.S. degree upon him on April 30, 1977.

Subsequent to the award of Crook's masters degree, members of the school's faculty began to suspect that portions of his thesis were bogus and based upon false and fabricated research data. On April 10, 1979, the University of Michigan Graduate School formally notified Crook that his thesis was being challenged and that his degree was at risk. The Graduate School held a hearing on this matter on September 22, 1979, after which it recommended that Crook's degree be rescinded. The Regents of the University subsequently voted to accept the recommendation, and Crook's masters degree was officially rescinded.

A number of the faculty members of the University's Department of Geological Sciences were purportedly concerned with the dissemination of false information which might result from published materials which were drawn from or based upon Crook's discredited thesis. They decided that in order to set the record straight and protect the reputation of the University, they would publish an article discrediting the "discoveries" announced in Crook's thesis and suggesting means by which the international geological community could avoid such misinformation in the future. With this in mind Professors Donald Peacor, William Simmons, Eric Essene, and William Heinrich ("professors") drafted an article and submitted it to the geological

publication, *The American Mineralogist*, (the official publication of co-defendant Mineralogical Society of America). Prior to the publication of the article, the professors and the editorial staff of *The American Mineralogist* forwarded a draft of the article to Crook in order to solicit his response and a possible reply article.[1] The discrediting article was eventually published in the January-February 1982 issue of *The American Mineralogist*, which Crook claims was released for distribution on or about February 28, 1982.

On February 17, 1983, Crook brought this action against the professors (in their individual and official capacities) and against the Mineralogical Society of America, alleging breach of contract, breach of fiduciary duties, defamation, intentional infliction of emotional distress, interference with a contractual relationship, and interference with a prospective advantage.[2] Defendant professors respond by moving for dismissal or summary judgment on all counts, moving to strike portions of the complaint, and moving for more definite statement.[3] For reasons stated, defendant professors' motion to dismiss is granted in part and denied in part, their motion to strike is denied, and their motion for more definite statement is granted in part and denied in part.

## II. DISCUSSION

### A. *Motions for Dismissal or Summary Judgment*

While the mass of papers filed by both parties in this motion might indicate that this is a complicated matter, the issues present for dismissal or summary judgment are not difficult.

### 1. *Eleventh Amendment Immunity*

■ Defendant professors' first argument is that this action is barred by Eleventh Amendment immunity. While the parties briefed this issue extensively, oral arguments revealed that there was substantial agreement about the applicability of the Eleventh Amendment to this situation. The parties concede that the University of Michigan is a branch of the state government which is entitled to the constitutional immunity of the state. *Ewing v. Board of Regents of the University of Michigan*, 552 F.Supp. 881 (E.D.Mich.1982). The parties also apparently concede that the Eleventh Amendment precludes actions for monetary damages against the state or its officers in their official capacities, but does not preclude actions for monetary damages against state officials in their individual capacities. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Here Crook, by way of verified complaint and affidavit, alleges that the various defendants incurred liability in their individual capacities. Defendant professors seek dismissal or summary judgment based on their assertion that they committed no acts in their individual capacities, and that they are immune in their official capacities. The Supreme Court addressed a situation virtually identical to this in *Scheuer*, and stated:

Analyzing the complaints in light of [precedent], we see that petitioners allege facts that demonstrate they are seeking to impose individual and personal liability on the *named defendants* for what they claim—but have not yet established by proof—was a deprivation of federal rights by these defendants under color of state law. Whatever the plain-

---

1. Crook drafted a rebuttal article, but the editors of *The American Mineralogist* deemed it unfit for publication in a scholarly journal.

2. Crook has also brought a related action which is presently pending before the Honorable Anna Diggs Taylor, Civ. No. 80-73347, in which he claims that the recision of his degree was improper and seeks its restitution.

3. During oral argument on this matter on September 1, 1983, defendant Mineralogical Society of America represented that it would file its own motion for summary judgment within 60 days. I took this matter under advisement in order to decide all related matters at one time. However, in that more than 90 days have elapsed and defendant Mineralogical Society has not yet filed its motion, I must proceed to decide the matters before me.

tiffs may or may not be able to establish as to the merits of their allegations, their claims, as stated in the complaints, given the favorable reading required by the Federal Rules of Civil Procedure, are not barred by the Eleventh Amendment. Consequently, the District Court erred in dismissing the complaints for lack of jurisdiction.

416 U.S. at 238, 94 S.Ct. at 1687. Similarly, in the case at hand it would be premature to grant dismissal or summary judgment at this time. Crook must be allowed the opportunity to attempt to prove the allegations set forth in his complaint. Of course, Crook's action is barred by the Eleventh Amendment insofar as it attempts to impose monetary damages on the professors in their official capacities. Thus, defendant professors' motion for dismissal based upon Eleventh Amendment immunity is granted in regard to claims against them for monetary damages in their official capacities, and denied in regard to all other aspects of the action.

### 2. *Privileged Statements*

■ Defendant professors' second argument is that Crook's defamation claim should be dismissed because their actions are privileged, either because they fall within the ambit of First Amendment academic freedoms or because Crook is a public figure within the meaning of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Little need be said about this contention. Even if the professors' actions are protected by academic privilege or Crook is a public figure (issues which I need not decide at this time), all parties concede that the privilege conferred would be a qualified privilege, and that liability could still be incurred if malice or bad faith on the part of the professors is demonstrated. Crook's verified complaint and affidavit clearly allege that the professors' actions are malicious. Dismissal or summary judgment cannot be granted; Crook must be given an opportunity to attempt to prove his contentions. Thus, defendant professors' motion

for dismissal or summary judgment based upon privilege is denied.

### 3. *Statute of Limitations*

Defendant professors also argue that dismissal or summary judgment should be granted on the basis of statute of limitations. Michigan's statute of limitations with regard to libel and slander is one year. M.C.L.A. § 600.5805(7). This action was filed on February 17, 1983. Thus, any cause of action for libel or slander which accrued before February 17, 1982, is barred. Defendant professors argue that this limitation bars action based upon the article in question, which was allegedly published on February 28, 1982. They base this contention on the disingenuous argument that Crook and other geologists saw the draft article at times before February 17, 1982, and that, under the single publication rule, the cause of action accrued on this unspecified earlier date.

■ The single publication rule is a common law creation which applies to mass publication printings or broadcasts and conclusively presumes that the cause of action accrued at the single date of first publication. *Tocco v. Time, Inc.*, 195 F.Supp. 410 (E.D.Mich.1961). It is intended to avoid the harshness of the traditional multiple publication rule which provided that a cause of action arose anew each time a single issue of the defaming item was sold or otherwise published. *Id.* The single publication rule in no way implies that the single date of publication will be at the time when a draft of the article is circulated or otherwise viewed by individuals involved in its publication. The only authority defendant professors cite in support of this argument is a New York State Court decision, *Stella v. James J. Farley Association, Inc.*, 204 Misc. 998, 122 N.Y.S.2d 322 (1953), which is, in fact, contrary to defendants' position and holds that individual viewings of allegedly defamatory material which occur prior to the date the material was released for sale do not mark the date of publication under the single publication rule.

■ The general rule is that the single publication occurs when the defamatory material is released for sale in accord with trade practices. See, Annot., *What Constitutes "Publication" of Libel in Order to Start Running of Period of Limitations*, 42 A.L.R.3d 807 (1972). While this rule may not always be easily applied, defendants have not contended that the publication in question was released for sale at a time prior to February 17, 1982.[4] Thus, I find that the statute of limitations does not bar Crook's action based upon the publication of the article in question, and defendant professors' motion for dismissal or summary judgment is denied in that regard. However, Crook's complaint also alleges defamation "through numerous letters written to third parties." The statute of limitations does bar Crook's action predicated upon such letters which were published prior to February 17, 1982, and defendant professors' motion for dismissal is granted in regard to such letters.

### 4. Failure to State a Claim on Contractual and Fiduciary Counts

■ Count I of Crook's complaint alleges that certain unspecified contracts arose out of the relationship between the parties, and that defendants in some way breached those contracts. Count II alleges a substantially similar claim predicated upon a breach of unspecified fiduciary obligations. Defendant professors move for dismissal or summary judgment as to these counts claiming failure to state a cause of action.

Crook's complaint fails to allege any of the particular elements of Counts I or II. At hearing Crook's counsel conceded that Counts I and II were "fall back positions," and that he did not have anything specific to offer in support of them at that time. Crook has offered no affidavit or deposition which puts forth facts to support these counts. It would be unfair to require defendants to defend against these vague claims without knowing the essential nature of the contractual or fiduciary duties which they are alleged to have breached. Therefore, defendant professors' motion for dismissal of these counts is granted without prejudice. If discovery should reveal the existence of such contractual or fiduciary relationships, Crook may re-state such claims.

### B. Motion to Strike or For More Definite Statement

Defendant professors have also moved to strike the common allegations of Crook's complaint and/or to require him to plead certain matters with greater specificity. Most of the requests by defendants in this regard have been mooted by this opinion or are unwarranted. However, defendants do have a valid request for relief with regard to Crook's claim of defamation based upon "numerous letters written to third parties." Defendants are entitled to a more definite statement with regard to such letters, specifying which letters are involved and the defamatory content of such letters. Thus, defendants' motion for a more definite statement is granted with regard to the matters concerning defamation by unspecified letters, and denied with regard to other matters. Further, defendants' motion to strike is denied.

An appropriate order may be submitted.

---

**4.** During oral hearing on this matter, defendant professors made the additional argument that the single publication rule does not apply because the journal in question is a technical, rather than popular, publication. I find this argument somewhat baffling. If the single publication rule does not apply, then the multiple publication rule applies, and under that rule Crook's cause of action would accrue anew with each sale of the magazine. Obviously, the application of such a rule would not aid defendants and would not indicate that the statute of limitations has run on the cause of action arising out of the publication of the article in question.