HÉCTOR OJEDA OJEDA, demandante y recurrido, *v.* EL VOCERO DE PUERTO RICO, INC., ETC., demandado y recurrente.

*Número:* CE-93-625 *Resuelto:* 26 de octubre de 1994

*Juan P. Marchand Quintero, José E. Colón Rodríguez* y *Francisco Ortiz Santini*, abogados de la recurrente; *Juan G. Nieves Casas*, abogado de la recurrida.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

El *9 de julio de 1993*, el Sr. Héctor Ojeda Ojeda presentó una demanda de daños y perjuicios contra El Vocero, Inc. Alegó que "en la página 11 del periódico El Vocero del [7][1] *de julio de 1992* se publicó una foto [suya] conjuntamente con un titular donde se le imputa[ba] haber cometido [el delito] de exposiciones deshonestas". (Énfasis suplido.) Señaló "[q]ue la antes mencionada información [era] del todo falsa y libelosa y fue publicada con total menosprecio [de] la verdad, exponiéndolo a sí al escarnio, odio, ridículo y

---

[1] Por error, se indicó en la demanda que la publicación se hizo el 11 de julio de 1992.

desprecio público [y que le ocasionó] la pérdida de su empleo". Indicó, además, que "[c]omo consecuencia de las acciones de la demandada se le ocasionaron daños a la reputación, honra, y a la vida privada y familiar ... en exceso de $500,000.00".

El Vocero, Inc. solicitó la desestimación de la reclamación. Alegó que la demanda se presentó el 9 de julio de 1993, es decir, trescientos sesenta y siete (367) días después que se publicó la noticia en el periódico, por lo que la reclamación estaba prescrita. Indicó que conforme al Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298, la acción para exigir la responsabilidad civil por injuria o calumnia prescribe por el transcurso de un (1) año. El señor Ojeda Ojeda se opuso a la desestimación. Mediante declaración jurada, señaló que mientras se encontraba detenido en la prisión se enteró de la noticia, cuatro (4) días después de su publicación, *el 11 de julio de 1992*.([2]) Fundamentó su oposición en la teoría cognocitiva del daño, la cual establece que el término prescriptivo de las acciones de daños y perjuicios comienza en el momento cuando el agraviado tenga conocimiento del daño.

El tribunal de instancia denegó la desestimación. El Vocero, Inc. solicitó una reconsideración. Alegó que en Puerto Rico rige la regla de la publicación única, la cual, entre otras cosas, establece que la prescripción, en casos de libelo, comienza a correr desde el preciso momento de la publicación. Arguyó que la prescripción, bajo la regla de publicación única, es una excepción a la regla general de la teoría cognocitiva del daño, vigente en nuestra jurisdicción. El tribunal a quo denegó la reconsideración. Inconforme con la decisión, El Vocero, Inc. acudió ante nos mediante un recurso de *certiorari*, en el que señaló que erró "el Tribunal de Instancia al entender que en nuestra jurisdicción no es de aplicación el principio consagrado por

---

([2]) También alegó que ese mismo día sufrió el "proceso interno" de los "ñeta", quienes lo "enjuiciaron" por lo señalado en dicha noticia.

la regla de la publicación única en términos de prescripción".

Le concedimos al señor Ojeda Ojeda veinte (20) días para que mostrara causa por la cual no debíamos expedir el auto solicitado y dictar sentencia para revocar la resolución emitida por el tribunal de instancia. Dicha parte no compareció. Procedemos a resolver.

I

Hemos expresado, reiteradamente, que en nuestro sistema de derecho, el daño, junto al acto y la omisión culposos o negligentes y el nexo de causalidad entre éstos, constituyen los elementos indispensables de la causa de acción resarcitoria de daños y perjuicios establecida en el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.[3] Dicha acción no puede ejercitarse si no concurren estos tres elementos constitutivos. En el proceso de infligir daños existen tres (3) etapas, distinguibles e identificables. La primera la constituye el acto o la omisión culposa o negligente. La segunda surge cuando subsiguientemente se produce una consecuencia lesiva o daño que causa menoscabo —ya sea físico, moral, económico, entre otros— en la persona que la sufre. Esta segunda etapa se conoce como la vertiente material u objetiva del daño, debido a que éste existe en la realidad física, aunque el perjudicado no la conozca. La tercera surge con el conocimiento del perjudicado del menoscabo sufrido, debido a que éste se manifiesta en alguna forma que permite que sea reconocido. Esta última etapa se denomina como la vertiente cognoscitiva del daño, ya que gira en torno al conocimiento que tiene la víctima del daño sufrido. Claro está, en el proceso de inferir daños, puede que las tres (3) etapas ocurran si-

---

[3] "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

multáneamente, pero también puede mediar un período de tiempo más o menos corto o largo entre cada una de ellas. Como podemos notar, la primera etapa —el acto culposo o negligente— es uno de los elementos indispensables de la causa de acción de daños y perjuicios; sin embargo, ésta no forma parte del concepto daño. Son la segunda y la tercera etapas las que constituyen los elementos de dicho concepto. En resumen, el concepto "daño o perjuicio" es la consecuencia de la acción culpable o negligente. Este concepto, por ende, no es sinónimo ni equivalente del acto o la omisión culpable o negligente que lo provoca sino que, por el contrario, es su consecuencia. Por ello, es necesario distinguir el momento cuando ocurra la consecuencia lesiva y el momento el perjudicado la reconozca, debido a que tal diferenciación conlleva efectos jurídicos de vital importancia, como lo es el momento cuando empieza a contar el plazo hábil durante el cual el perjudicado puede iniciar su causa de acción de daños y perjuicios. Véase, en general, H.M. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. I, Cap. VIII, págs. 423–427, 439–442 y 567–572.

El Art. 1868 del Código Civil, *supra*, dispone que la acción para exigir la responsabilidad civil por injuria o calumnia y la acción de daños causados por culpa o negligencia prescribe al año desde que lo supo el agraviado. Por su parte, el Art. 1869 del Código Civil, 31 L.P.R.A. sec. 5299, establece que el plazo hábil para el ejercicio de toda clase de acciones comienza a contar desde que éstas puedan ejercitarse. Así pues, al interpretarse conjuntamente las disposiciones de los Arts. 1802, 1868 y 1869 del Código Civil, *supra*, surge que el término durante el cual puede ejercitarse *toda acción* de daños y perjuicios comienza a partir del momento cuando el perjudicado *conoce* sobre del daño que ha sufrido. Nuestro ordenamiento acoge así la doctrina cognoscitiva del daño.

Este Foro ha resuelto, en diversas ocasiones, que

el momento cuando se comenzará a contar el plazo para el comienzo de la acción de daños ocurre cuando el perjudicado *se entera del daño*. Es entonces cuando surge y existe para el perjudicado, y es entonces cuando surte efectos jurídicos, ya que puede alegarse y reclamarse la indemnización correspondiente. Si no hay daño, no hay acción jurídica, pues no hay remedio en nuestro Derecho, debido a que falta uno (1) de los elementos constitutivos de la causa de acción. Además, para que comience a correr el término prescriptivo no es suficiente que el perjudicado sepa que ha sufrido un daño, sino que es necesario, también, que conozca quién es el causante del daño para poder dirigir su demanda contra él. En Puerto Rico, por lo tanto, el derecho aplicable y vigente es que el plazo prescriptivo para el ejercicio de las acciones de daños y perjuicios no comienza en el instante cuando se produce la acción u omisión culposa o negligente, sino en el momento en que el perjudicado conozca que ha sufrido un daño, y sepa, además, quién es el responsable. *Colón Prieto v. Géigel*, 115 D.P.R. 232, 246 (1984); *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347, 360–361 (1988); *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740 (1992); *Toledo Maldonado v. Cartagena Ortiz*, 132 D.P.R. 249 (1992); Brau del Toro, *op. cit.*[4]

## II

En Puerto Rico está reconocida la acción de daños y perjuicios por difamación.[5] Ésta es una acción torticera genérica que incluye libelo y calumnia. Para que exista el libelo se requiere que exista un expediente perma-

---

[4] Tan es así, que declaramos inconstitucional una excepción creada por la última oración del inciso (1) del Art. 41.090 del Código de Seguros, 26 L.P.R.A. sec. 4109, por violar el debido proceso de ley, ya que fijaba un término máximo de dos (2) años para el inicio de la acción por impericia médico-hospitalaria, independientemente de si el daño se descubriera o no dentro de dicho término. *Alicea v. Córdova*, 117 D.P.R. 676 (1986). Véase, además, *Colón Prieto v. Géigel*, 115 D.P.R. 232 (1984), en el cual resolvimos que la *ignorancia del titular del derecho sobre si ha nacido o no una causa de acción* derivada de un acto ilícito es pertinente y determinante.

[5] La acción para exigir la responsabilidad civil por injuria y calumnia es lo mismo que la acción de daños y perjuicios por difamación.

nente de la expresión difamatoria, además de los otros elementos de la acción. La calumnia se configura cuando se hace una expresión oral difamatoria junto con los otros elementos de la acción. La acción civil de daños y perjuicios ocasionados por difamación está estatuida en la Ley de Libelo y Calumnia, Ley de 19 de febrero de 1902 (32 L.P.R.A. secs. 3141–3149.([6]) Sin embargo, en *Romany v. El Mundo, Inc.*, 89 D.P.R. 604, 618 (1963), resolvimos que cuando se efectúan expresiones o publicaciones difamatorias que producen daños, sin que medie malicia o alguno de los elementos para que proceda la acción estatutaria de los daños por difamación, siempre procederá una acción de daños y perjuicios bajo el Art. 1802 del Código Civil, *supra*, teniendo que probarse todos los elementos indispensables de dicha causa de acción.

■ Así pues, en nuestra jurisdicción, conforme a la ley y la jurisprudencia, existen dos (2) causas de acción en daños por difamación: (1) la establecida en la Ley de Libelo y Calumnia y (2) la derivada del Art. 1802 del Código Civil, *supra*, fundamentado en la publicación de una expresión difamatoria por culpa o negligencia, daños y relación causal entre estos dos (2) elementos. No obstante, dicha dicotomía parece ser ya innecesaria, habida cuenta que jurisprudencialmente se han dejado sin efecto diversas disposiciones de la Ley de Libelo y Calumnia.([7])

---

([6]) Conforme a la Sec. 2 de la Ley de Libelo y Calumnia, 32 L.P.R.A. sec. 3142, para que exista *libelo* se requiere que concurran los elementos siguientes:

1. Que se trate de una expresión difamatoria según lo define dicha sección.
2. Que se publique la expresión difamatoria.
3. Que quede un expediente permanente de la expresión difamatoria.
4. Que se haga maliciosamente.

Para la definición de calumnia, véase la Sec. 3 de la Ley de Libelo y Calumnia, 32 L.P.R.A. sec. 3143.

([7]) Podemos mencionar, por ejemplo, que doctrinas desarrolladas al amparo de la ley citada, tales como las doctrinas de la presunción de malicia, la responsabilidad sin falta y la presunción de daños, ya no están vigentes. Estos cambios, aunque no han derogado la Ley de Libelo y Calumnia, han tenido el efecto de modificarla significativamente. *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415, 423 (1977); *Villanueva v. Hernández Class*, 128 D.P.R. 618 (1991).

En *Clavell v. El Vocero de P.R.*, 115 D.P.R. 685, 690–691 (1984), señalamos que, en Puerto Rico, la protección contra la expresión difamatoria es el Art. II, Secs. 4 y 8 de nuestra Constitución, L.P.R.A., Tomo 1. Estas secciones consagran la libertad de expresión y de prensa y el derecho a la intimidad. Expresamos, además, que es a nuestro ordenamiento jurídico al que debe acudirse para sopesar los intereses involucrados en casos de difamación. La jurisprudencia norteamericana, federal o estatal, sólo tiene valor persuasivo e ilustrativo, ya que nuestra percepción de los valores involucrados y el modo de conciliarlos pueden ser enteramente distintos. Esto es así, toda vez que Puerto Rico tiene facultad para establecer sus normas de responsabilidad en casos de difamación siempre que no se imponga una responsabilidad absoluta, ni se reduzca el contenido de la Primera Enmienda de la Constitución federal. En *Villanueva v. Hernández Class*, 128 D.P.R. 618 (1991), reiteramos que la vigencia de nuestra Ley de Libelo y Calumnia está condicionada, naturalmente, a que su aplicación sea compatible con las disposiciones citadas de nuestra Constitución, *Clavell v. El Vocero de P.R.*, supra, pág. 690; *Cortés Portalatín v. Hau Colón*, 103 D.P.R. 734, 738 (1975); *García Cruz v. El Mundo, Inc.*, 108 D.P.R. 174, 180 (1978); así como tampoco con las interpretaciones judiciales que sobre la Primera Enmienda de la Constitución de Estados Unidos realice el Tribunal Supremo federal. *Clavell v. El Vocero de P.R.*, supra, pág. 690; Brau del Toro, *op. cit.*

---

En *Cortés Portalatín v. Hau Colón*, 103 D.P.R. 734, 737–738 (1975), señalamos:

"El derecho relativo a la protección de la honra ha llevado una vida movida en nuestro país. El Derecho Civil rigió su desarrollo y estableció sus límites por varios siglos, derivando sus normas, por supuesto, del Derecho Romano ....

"A pesar que el [*common law*], ... con las diferencias históricas de rigor, ... bebió también de la fuente del Derecho Romano al moldear sus normas en ese sector, se estimó necesario en Puerto Rico aprobar una ley sobre el particular el 19 de febrero de 1902. ... Esta Ley de Libelo y Calumnia ha sentado por varias décadas los principios centrales de esta parte del derecho puertorriqueño, pero a partir de 1952 diversos preceptos constitucionales afectan seriamente el análisis de muchas soluciones antiguamente derivables de la ley de 1902." (Citas omitidas.)

 De lo anterior podemos concluir que desde la aprobación de la Constitución del Estado Libre Asociado de Puerto Rico, nuestra Ley de Libelo y Calumnia ha perdido gran parte de su importancia y que los casos relacionados con este tema se resolverán, como regla general, bajo la normativa de los daños y perjuicios extracontractuales; es decir, examinando si hubo un acto u omisión culposa o negligente, daños y la relación causal entre esos dos (2) elementos, y haciendo un balance entre la libertad de expresión y de prensa contra el derecho a la intimidad. Ello, sin embargo, no constituye un impedimento para que nos esforcemos por darle efecto a las disposiciones de nuestra Ley de Libelo y Calumnia que aún tienen vigencia. *Villanueva v. Hernández Class*, supra, págs. 641–642 esc. 13. La Sec. 8 de la referida ley, 32 L.P.R.A. sec. 3148, dispone que para sostener el cargo de haber publicado un libelo, no es necesario que la publicación objeto de la demanda haya sido leída por persona alguna. Será prueba suficiente el hecho que el demandado haya dejado expuesto el libelo de tal manera que éste haya podido ser leído por cualquier otra persona. Es decir, no hay que traer el testimonio de personas que leyeron la publicación, sino que es suficiente presentar la publicación —la cual obviamente el demandante ha leído— que contiene las expresiones libelosas y que ésta ha sido expuesta al conocimiento de la comunidad en general.

 El demandante en un caso de libelo debe probar que la información publicada es falsa y que, por causa de su publicación, sufrió daños reales. *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415, 427 (1977). Sin embargo, aun cuando la información sea falsa, en el caso de la persona privada, ésta no tendrá derecho a ser indemnizada a menos que pruebe que la imputación fue hecha de forma negligente. *Oliveras v. Paniagua Diez*, 115 D.P.R. 257, 262 (1984). En los casos en que estén involucrados funcionarios o figuras públicas, por otro lado, el demandante deberá

probar, además, que la información fue publicada con malicia real, es decir, a sabiendas de que ésta era falsa o con grave menosprecio de si era falsa o no. *Soc. de Gananciales v. López*, 116 D.P.R. 112, 115 (1985); *Torres Silva v. El Mundo, Inc.*, supra, pág. 421. De esta forma, la acción por difamación en Puerto Rico se ha convertido en híbrida, cuyas vertientes aplican dependiendo de la categoría de los supuestos perjudicados. Esto es, continúa siendo una acción torticera intencional en cuanto a funcionarios y figuras públicas, y en una acción de daños y perjuicios fundamentada en negligencia cuando el supuesto perjudicado es una persona privada. La negligencia es la norma permitida por el Art. 1802 del Código Civil, *supra*, para la acción de libelo de una persona privada contra un periódico por la publicación errónea de información difamatoria. *Torres Silva v. El Mundo, Inc.*, supra, pág. 423.

## III

Como ya señaláramos, toda causa de acción de daños y perjuicios, y la acción por difamación es de esta clase, se compone de tres (3) elementos: (1) una acción u omisión; (2) daños, y (3) la relación causal entre éstas. El daño, en los casos de difamación, es el menoscabo de la opinión que tienen los demás sobre el valor de una persona en particular. En la medida que la persona se entere de que su honor ha sido perjudicado es que existe el daño. El mundo entero puede tener la peor opinión de nosotros y menospreciarnos, sin embargo, eso en nada nos perjudica, en tanto nadie en alta voz o por escrito la exprese y uno se entere de tal manifestación. Véanse: F. Aponte Parés, *La libertad de opinión y el sentimiento del honor*, 30 Rev. C. Abo. P.R. 55 (1969); J.M. Cassé Ballesteros, *El Derecho a la Honra*, 14 Rev. Der. Proc. Pur. 103 (1964); R. Martínez Álvarez, *Derecho a la honra y al honor*, XVII Rev. Jur. U.P.R. 139 (1947). En el *common law*, la difamación es un ataque a la reputación de las personas en la comunidad. Brau del

Toro, *op. cit.*, pág. 986. En el derecho civil, la difamación constituye una ofensa contra el honor. Íd. Así es en Puerto Rico.[8]

El término prescriptivo para las acciones de libelo no puede comenzar antes de que la persona perjudicada conozca acerca del daño y quién se lo produjo, ya que, conforme a nuestro ordenamiento jurídico, sin dicho conocimiento la causa de acción no ha nacido, porque no se ha producido uno de los elementos constitutivos indispensables. Si la persona no se ha enterado que su reputación ha sido mancillada, no hay daño, y si no hay daño, no hay acción judicial, pues no hay remedio que proveer. Recuérdese, además, que todo proceso de daños y perjuicios extracontractual se inicia a instancia de una persona natural o jurídica, nunca de oficio, quien es el verdadero titular del derecho y que, como norma general, puede ejercitar la acción. *De Jesús v. Chardón*, 116 D.P.R. 238, 247 (1985). El titular del derecho a que su honor no sea desvalorizado es la persona ofendida por la publicación, no la comunidad en general.

Según el enfoque propuesto por los demandados, el concepto "daño" se equipara con el de la "conducta culposa o negligente"; es decir, con el momento cuando se publicó la alegada noticia libelosa, independientemente del momento cuando la persona perjudicada conozca de su publicación. De esa manera, el plazo de un (1) año establecido en el Art. 1868 del Código Civil, *supra*, para las acciones de libelo y calumnia, adquiriría características de un término de caducidad. Esto tendría el efecto de privar a una persona difamada de su causa de acción antes de conocer que su honor fue dañado. Por lo tanto, si una persona descubriera la existencia de la publicación libelosa, que le ha causado daño, luego de transcurrido el término de un (1) año, su

---

[8] Véanse, también, los Arts. 118–121 del Código Penal de 1974 (33 L.P.R.A. secs. 4101–4104) que tipifican el delito de difamación. Éste está clasificado como *delito contra el honor.*

acción habría prescrito antes de que conociera de su existencia. De tal forma, dicha persona, por no conocer acerca del daño antes de que expirase el término hábil, se vería privada de todo tipo de remedio. Este resultado es insostenible.

Los argumentos expresados por la parte demandante para sustentar su posición no nos convencen.

La regla de la publicación única la adoptamos en *Díaz Segarra v. El Vocero*, 105 D.P.R. 850 (1977), con un propósito específico. Allí expresamos que rechazábamos la regla del *common law* de causa de acción múltiple, que reconoce una razón de pedir remedio por cada ejemplar de un periódico vendido o entregado que contuviera una imputación libelosa, debido a que consideramos que la protección de la dignidad contra ataques abusivos y el derecho a la intimidad son factibles sin acudir a remedios que puedan resultar en mengua y erosión de la libertad de prensa. Íd., págs. 851–852. Sin embargo, la adopción de esta regla no puede extenderse de forma tal que menoscabe otros derechos reconocidos por nuestro ordenamiento. En nuestra jurisdicción, la importancia para los ciudadanos de poder reclamar una compensación razonable por los daños y perjuicios sufridos como consecuencia de actos u omisiones culposas o negligentes, independientemente del acto que genere esos daños, es incuestionable y no necesitamos abundar sobre ese criterio. Además, en varias ocasiones hemos expresado que las condiciones limitativas del derecho de las personas a solicitar reparación debén interpretarse restrictivamente. *Alicea v. Córdova*, 117 D.P.R. 676, 691 (1986); *Vázquez Negrón v. E.L.A.*, 109 D.P.R. 19, 25 (1979); *Insurance Co. of P.R. v. Ruiz*, 96 D.P.R. 175, 179 (1968). Por tal razón, este Foro, como árbitro final de las controversias locales, debe adoptar las normas que sean más justas, razonables y equitativas conforme a nuestra idiosincrasia, y rechazar una regla de otra jurisdicción, por ilustrativa y persuasiva que sea, que conflija con nuestra

tradición jurídica o que choque con nuestro sentido de la justicia.

Por otro lado, aunque el historial legislativo del Art. 1868 del Código Civil, *supra*, no ofrece explicación alguna sobre su alcance, no obstante, la procedencia de dicho artículo y sus correspondientes interpretaciones son sumamente ilustrativas.

El referido artículo procede del Art. 1968 del Código Civil español,([9]) que en su inciso (2) es idéntico al nuestro con la excepción de una coma, la cual separa la parte referente a la responsabilidad por acciones bajo el Art. 1902, al cual corresponde nuestro Art. 1802, de la frase "desde que lo supo el agraviado". Esto claramente sugiere que dicha cláusula final aplica tanto a las acciones por injuria o calumnia como a las de daños y perjuicios por culpa o negligencia.([10]) La razón de ser de esta redacción era esta-

---

([9]) El Art. 1968 del Código Civil español, en su inciso (2), lee como sigue: "Prescriben por el transcurso de un año:

"(2) La acción para exigir la responsabilidad civil por injuria o calumnia, y por las obligaciones derivadas de la culpa o negligencia de que se trata en el artículo 1902, desde que lo supo el agraviado." Q.M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1965, L. XXXII, Vol. 2, pág. 866.

([10]) Podemos llegar a este resultado por sentido común. No es necesario recurrir a la regla del último antecedente. Conforme a esta regla, las palabras, frases y cláusulas relativas, o que modifican, deben ser aplicadas a las palabras o frases que inmediatamente las preceden y no deben ser interpretadas en el sentido de extenderse a incluir otras más remotas. R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, pág. 343. Los casos, en los que ha sido aplicada, tratan sobre controversias relacionadas con estatutos penales. *Meléndez v. Tribunal Superior*, 90 D.P.R. 656 (1964); *Pueblo v. Vargas Ramírez*, 84 D.P.R. 225 (1961). En estos casos, puede que estuviera justificada la utilización de la regla mencionada como manera de lograr la norma establecida en nuestra jurisdicción en cuanto a que los estatutos penales deben interpretarse restrictivamente. Recuérdese que el Art. 8 del Código Penal, 33 L.P.R.A. sec. 3031, recoge el principio de legalidad, el cual establece que no puede instarse una acción penal contra persona alguna por un hecho que no esté expresamente definido por ley como delito ni pueden crearse, por analogía, delitos, penas y medidas de seguridad. *Pueblo v. Ríos Nogueras*, 114 D.P.R. 256, 260 (1983). Debe tenerse presente, también, que el debido proceso de ley sustantivo, que garantiza nuestra Constitución, requiere que los estatutos penales sean claros y que den aviso adecuado sobre lo que prohíben. Por esta razón, ante una ley demasiado vaga, que no informa adecuadamente lo que prohíbe, puede utilizarse la regla del último antecedente para restringir su aplicación. Sin embargo, para materias en que la interpretación restrictiva no es la norma, como son los estatutos reparadores, no debe utili-

blecer una diferencia entre las acciones de responsabilidad civil por injuria o calumnia y la acción penal existente bajo esos mismos casos. El Art. 1968(2) se refiere particularmente a la prescripción del resarcimiento de dichas acciones en el ámbito civil.

Sobre el particular, señala el comentarista Fernando Reglero Campos:

> En lo relativo a los plazos de prescripción, cuando se trate del delito de calumnias coinciden, *prima facie*, los de la acción penal y civil .... Lo que no quiere decir que ambas prescriban necesariamente al mismo tiempo, puesto que no es infrecuente que, prescrita la primera, no ocurra lo mismo con la segunda. Ello obedece a que el plazo de prescripción de la acción penal comienza a computarse "desde el día en que se hubiese cometido el delito" ..., mientras que el de la acción civil comienza "desde que lo supo el agraviado". M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1994, T. XXV, Vol. 2, pág. 402.

---

zarse la referida regla.

Sobre la utilidad de la regla del último antecedente, expresan los comentaristas Bernier y Cuevas Segarra:

"A pesar de su aplicación por nuestro Tribunal Supremo en los referidos casos de *Vargas* y *Meléndez*, esta regla del *último antecedente* no tiene gran valor. Sólo funciona cuando nada hay en el estatuto que indique que la palabra relativa o la disposición modificadora tiende a surtir efecto diferente. *La regla sólo debe utilizarse cuando otras reglas de hermenéutica no hayan permitido descubrir la verdadera intención del legislador.* Si hay algo en la ley indicativo de que la intención es que la palabra relativa o disposición modificadora se aplique a otras palabras en vez del antecedente inmediatamente anterior, la regla debe ser descartada. Basta una leve indicación para que pueda extenderse el alcance del término relativo o disposición modificadora a otras palabras, en lugar de sólo al último antecedente. *Esa extensión puede ser exigida por el significado natural y de sentido común de la ley*, especialmente si con ello se evita un resultado absurdo o se impide una desviación del evidente propósito del legislador. *Todavía más, si surge que el último antecedente puede aplicarse de igual manera a todas las disposiciones anteriores, debe aplicarse a todas las palabras que le anteceden. Bowie v. Buscaglia Tes.*, 63 DPR 546, 552–553 (1944) (Snyder).

"En otras palabras, esta regla del *último antecedente* dista mucho de ser una regla absoluta, y por eso nuestro Tribunal Supremo, en *Mayagüez Sugar Co. v. Carreras, Tes.*, 59 DPR 720, 723–728 (1942) (Del Toro), aconseja cautela contra su aplicación general y universal. En efecto, en el caso de *Bowie, supra*, se dijo al respecto:

"*Constituiría un flagrante mal uso de la doctrina del 'último antecedente' y en efecto sería resolver que uno nunca puede poner una frase al final de una oración con la intención de que ésta modifique una lista de partidas anteriores, no importa lo pequeña que sea. Adoptar tal regla inexorable sería hacer caso omiso de las reglas familiares de gramática y cánones tradicionales de interpretación.*" (Énfasis suplido y en el original.) Bernier y Cuevas Segarra, *op. cit.*, pág. 343.

También señala Reglero Campos que este plazo anual, señalado por el Código Civil para la prescripción de la acción de reclamación de daños por injurias o calumnias y para los derivados de la responsabilidad civil extracontractual, tiene su antecedente más remoto en la *actio iniurii* del Derecho romano. De ahí pasó a las Partidas y, finalmente, al Art. 1976 del Proyecto del Código Civil, Albaladejo, *op. cit.*, págs. 404–407. A estos fines, añade Reglero Campos que, en cuanto al criterio de fijación, en particular, del momento cuando ha de comenzar a computarse dicho plazo prescriptivo, es claro que la expresión "desde que lo supo el agraviado", utilizada por el Art. 1968(2) del Código Civil español está pensado más para los supuestos de injuria o calumnia que a los de responsabilidad por daños del Art. 1902 del Código Civil, *supra.* Así "lo acredita la utilización del término agraviado y no otro más propio en materia de daños materiales o corporales como 'víctima' o 'perjudicado' ". Albaladejo, *op. cit.*, págs. 435–438. El mismo artículo "lo", utilizado por este inciso, es "fácilmente referible al conocimiento del acto injurioso o calumnioso". Íd., pág. 438.

De igual forma, el tratadista Federico Puig Peña atiende este asunto de una manera muy sencilla y organizada. Establece, primero, que en las acciones para exigir responsabilidad civil, se contará el término prescriptivo a partir del momento cuando el agraviado tuvo conocimiento del daño que sufrió. Dentro de los términos para las acciones personales, separa un inciso para la prescripción de un (1) año; en éste incluye aquellas (1) por injuria o calumnia, cuando es independiente de la penal, y (2) por acciones derivadas de culpa o negligencia. F. Puig Peña, *Compendio de Derecho Civil Español*, Madrid, Ed. Pirámide, 1976, págs. 387–388.

En fin, en el Derecho español, el plazo de prescripción para las acciones por injuria o calumnia comienza

a contarse desde. el momento cuando el agraviado conozca del hecho difamatorio.

Este Tribunal ha establecido que cuando un estatuto sea adoptado de otra jurisdicción, y no aparezca en el historial legislativo algo en contrario, debe presumirse que se adoptó para fines de igual política pública la interpretación que al mismo se le ha dado en la jurisdicción de su origen, aun cuando, históricamente, no existiera en Puerto Rico la situación que se quiso conjurar mediante la ley en esa otra jurisdicción. *El Imparcial, Inc. v. Brotherhood, etc.*, 82 D.P.R. 164, 173 (1961). Por tal razón, consideramos apropiado acoger la interpretación que los comentaristas mencionados han hecho sobre el Art. 1968 del Código Civil español, del cual surge nuestro Art. 1868, *supra.*

Es norma reconocida que al interpretar las diferentes secciones, artículos y apartados de una ley, y las diveras leyes relacionadas entre sí por su objetivo o propósito, debe hacerse conjuntamente, refiriéndose a unas con las otras, como un todo, buscando la intención legislativa. En otras palabras, deben ser tratadas como un todo armónico, leyéndolas en conjunto y no interpretando aisladamente sus disposiciones. Art. 18 del Código Civil, 31 L.P.R.A. sec. 18; *United Hotels of P.R. v. Willig*, 89 D.P.R. 188, 195 (1963); *Asoc. Médica de P.R. v. Cruz Azul*, 118 D.P.R. 669, 677 (1987); *Consejo Educación Superior v. U.I.A.*, 120 D.P.R. 224, 244 (1987). La lectura en conjunto de la Ley de Libelo y Calumnia y de los Arts. 1802, 1868 y 1869 del Código Civil, *supra,* junto con nuestra jurisprudencia interpretativa sobre prescripción de las acciones de daños y perjuicios, y la discusión de los comentaristas españoles nos lleva a concluir que el período de un (1) año para las acciones de daños y perjuicios por difamación comienza desde que el agraviado obtiene conocimiento del daño. Es desde ese momento que la causa de acción es rea-

lizable y nace. Mientras no exista ese daño, no surge la trilogía de elementos que constituyen la causa de acción.

Por todo lo antes expresado, no podemos suscribir la tesis de la parte demandada de que el Art. 1868 del Código Civil, *supra*, limita la frase "desde que lo supo el agraviado" a las obligaciones derivadas de culpa y negligencia, excluyendo las acciones de responsabilidad civil por injuria o calumnia.

Ahora bien, debido a la amplia difusión que tienen ciertos medios de comunicación en un país de limitada extensión territorial como el nuestro, es lógico que una vez se presente la evidencia de la publicación de la noticia libelosa en un rotativo de circulación general en la Isla, de esta evidencia circunstancial se pueda razonablemente inferir que la persona perjudicada se enteró del daño el mismo día de la publicación de dicha información. En casos como el de autos, en que el demandado alegue y demuestre, de la forma antes descrita, que el término hábil para presentar la acción por difamación está prescrita, le corresponde, entonces, a la parte perjudicada por la publicación rebatir la inferencia mencionada, presentando prueba de que se enteró de la información en una fecha posterior a su publicación.

En el caso ante nos, El Vocero, Inc. acompañó su solicitud de sentencia sumaria con una copia de la noticia sobre el señor Ojeda Ojeda, que se publicó en la pág. 11 de la edición del martes 7 de julio de 1992. El señor Ojeda Ojeda, en su oposición a la referida moción, alegó, y a esos efectos suscribió una declaración jurada, que se enteró el 11 de julio de 1992 que se había publicado la noticia supuestamente libelosa. De esta forma, controvirtió la inferencia de que se enteró de dicha noticia el mismo día de su publicación. Bajo estas circunstancias, y a tenor con las normas de derecho antes expuestas, no erró el foro de instancia al negarse a desestimar por prescripción la demanda presentada mediante el mecanismo procesal de la

sentencia sumaria. Por consiguiente, *se expide el auto de "certiorari" y se dictará sentencia para confirmar la resolución emitida por el foro de instancia.*

El Juez Asociado Señor Negrón García concurrió con el resultado con opinión escrita. El Juez Asociado Señor Rebollo López disintió con opinión escrita.

— O —

Opinión concurrente del Juez Asociado Señor Negrón García.

Suscribimos la decisión del Tribunal. Por interacción de los Arts. 1802 y 1868 del Código Civil, 31 L.P.R.A. secs. 5141 y 5298, la causa de acción por líbelo nace cuando la persona perjudicada conoce la publicación de la noticia libelosa y no desde la fecha cuando efectivamente se haya publicado. Ello recoge la esencia de la teoría cognoscitiva tradicional del daño en materia de responsabilidad civil extracontractual.

No obstante, preocupa que esta norma pudiera malinterpretarse y de que una mera alegación en cuanto a que se conoció de la información difamatoria en una fecha específica posterior a su publicación, establezca, en conclusión, que en ese momento nació la causa de acción.

Bajo la dinámica de los artículos antes mencionados, hemos de presumir que el perjudicado supo del daño desde la publicación. De no coincidir ambos momentos, recaerá sobre él establecer que su causa de acción fue presentada a tiempo. A estos efectos resulta esclarecedor lo expresado por H.M. Brau del Toro, en su obra *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., Vol. 1, Cap. VIII, 1987, pág. 441:

La doctrina concurre sustancialmente en que parece que debe presumirse que el perjudicado supo del daño en el momento mismo del acto culposo o negligente —excepto en situa-

ciones como aquélla en que el perjudicado sufre una lesión cráneo-cerebral y está inconsciente por varias semanas o meses— y que, en todo caso, tiene la carga de la prueba para establecer que obtuvo conocimiento del daño en una fecha posterior. L. Díez Picaso, *id.* De todos modos, esto no altera nada, ya que el perjudicado-demandante tiene siempre la carga de la prueba de todos los hechos determinantes del elemento indispensable del daño en la acción judicial resarcitoria, aun en casos de responsabilidad absoluta.

Esta presunción está avalada por la lógica y los criterios de alta probabilidad, razón fundamental de las presunciones. El alcance a las masas de los medios de difusión pública —periódicos, radio, televisión— la validan. Así establecemos una fina correlación entre el hecho básico y el presumido. Claro está, la eficacia de esta presunción dependerá de una evaluación de los factores individuales del demandante, su accesibilidad a la noticia libelosa y su mayor o menor alcance de difusión.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

En múltiples ocasiones hemos tenido la oportunidad de manifestarnos en torno a la acción civil por daños y perjuicios por libelo y calumnia. Ley de 19 de febrero de 1902 (32 L.P.R.A. sec. 3141 *et seq.*). Ello no obstante, *nunca antes habíamos tenido la oportunidad de enfrentarnos a la controversia que el caso de autos plantea, a saber*: si el término prescriptivo de un (1) año —que establece el Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298— para reclamar por publicaciones alegadamente difamatorias, *comienza a correr desde la fecha de la publicación de la alegada noticia difamatoria en un periódico de circulación general en Puerto Rico*, o si, por el contrario, *comienza cuando la persona alegadamente afectada y difamada se entera de lo publicado*, irrespectivo de la fecha en que esto suceda.

En el día de hoy, la mayoría del Tribunal —al entender, *erróneamente*, que *hasta tanto* la persona a la que se refiere la publicación difamatoria *"no se ha enterado* que su reputación ha sido mancillada, *no hay daño*, y si no hay daño, no hay acción judicial, pues no hay remedio que proveer"*, (énfasis suplido) opinión mayoritaria, pág. 330— *resuelve que* el período de un (1) año para las acciones de daños y perjuicios por difamación comienza *desde que el agraviado tuvo conocimiento de la noticia difamatoria*.

*No* podemos estar de acuerdo. Como explicaremos más adelante en detalle, la publicación de una noticia libelosa o difamatoria *lo que afecta es la reputación general de que goza el ciudadano en la comunidad*; esto es, *lo que se "daña" es la opinión que de esa persona tienen sus conciudadanos*. En consecuencia, la causa de acción nace *desde el momento en que* la reputación de esa persona, o la opinión que de él tienen sus vecinos, *queda afectada* —cual es, el momento en que se publica la noticia y sus vecinos y conciudadanos la leen— *"daño" que es precisamente por el cual se reclama*.

Consciente de ello, haciendo malabares, tratando de estar "con Dios y con el diablo" a la misma vez, y agravando el error que comete, *establece* la mayoría, motu proprio y por fíat judicial, una "presunción" a los efectos de que los tribunales deberán presumir que "la persona perjudicada se enteró del daño el mismo día de la publicación de" la información libelosa; "presunción judicial" que el ciudadano demandante vendrá en la obligación de "rebatir". Opinión mayoritaria, pág. 336. *Realmente, la imaginación y el poder que, aparentemente, entiende tener la mayoría del Tribunal para legislar parece no tener fin*.

I

El *9 de julio de 1993*, Héctor Ojeda Ojeda radicó una acción de daños y perjuicios ante el Tribunal Superior, Sala

de San Juan, contra El Vocero, Inc.(¹) En dicha acción alegó, en síntesis, que en la pág. once (11) del periódico *El Vocero de Puerto Rico* del *martes 7 de julio de 1992* se publicó una fotografía suya conjuntamente con un titular donde se le imputó haber cometido el delito de exposiciones deshonestas.(²) Alegó, en adición, que esa información era falsa y libelosa, que fue publicada en total menosprecio de la verdad, exponiéndolo así al escarnio, odio, ridículo y desprecio público ocasionándole la pérdida de su empleo y daños a la reputación, honra y a la vida privada y familiar, daños que calculó en exceso de quinientos mil dólares ($500,000).

El 17 de agosto de 1993, la parte demandada presentó una *solicitud de desestimación* alegando que la acción del demandante no fue incoada dentro del término hábil de un (1) año contemplado por el Art. 1868 del Código Civil, *supra*. Expuso que la noticia relacionada con el señor Ojeda se publicó el 7 de julio de 1992 y que la demanda fue presentada el 9 de julio de 1993 y que, por lo tanto, la reclamación estaba prescrita.

Por su parte, el 14 de septiembre de 1993, el demandante se opuso a la desestimación y, mediante declaración jurada suscrita el 9 de septiembre de 1993, señaló que mientras se encontraba recluido en una institución penal fue que se enteró del contenido de la noticia, esto es, cuatro (4) días después de su publicación, a saber, *el 11 de julio de 1992*. Invocó, el demandante, la "teoría cognoscitiva del daño" para establecer que el término prescriptivo comenzó a correr cuando *se enteró de la publicación de la referida noticia* y no cuando se publicó la misma, por lo que su reclamación no estaba prescrita.

---

(¹) En la primera comparecencia de la parte demandada —Solicitud de desestimación de 17 de agosto de 1993— ésta aclara que fue erróneamente denominada en la demanda como El Vocero, Inc., en lugar de Caribbean International News Corp.

(²) La noticia titulada "Exposiciones Deshonestas" leía como sigue: "Héctor Ojeda Ojeda, vecino de la Calle Nin, de Santurce, sale del Centro Judicial de San Juan rumbo a la cárcel. Había orden para su arresto por cargos de exposiciones deshonestas y otros". *Exhibit* 1, pág. 1.

El tribunal de instancia declaró sin lugar la moción de desestimación el 20 de septiembre de 1993. El 24 de septiembre de 1993 la parte demandada solicitó reconsideración. En dicha moción adujo que en Puerto Rico rige la "regla de la publicación única", como consecuencia de lo cual, en casos de difamación por publicaciones de prensa, el término prescriptivo comienza a correr desde el preciso momento de la publicación. Sostuvo que la prescripción bajo la "regla de la publicación única" es una *excepción* a la regla general de la "teoría cognoscitiva del daño" vigente en nuestra jurisdicción. El 30 de septiembre de 1993, el tribunal de instancia declaró no ha lugar dicha solicitud de reconsideración.

Inconforme con la decisión de instancia, el demandado recurrente acudió ante este Tribunal, vía *certiorari*, alegando que "[i]ncidió el Tribunal de Instancia al entender que en nuestra jurisdicción no es de aplicación el principio consagrado por la regla de la publicación única en términos de prescripción". Petición de *certiorari*, págs. 2–3. El recurrente alega, en síntesis, que bajo la "doctrina de la publicación única" el cómputo de la prescripción, en reclamaciones por libelo, comienza a contar desde la fecha de la publicación de la noticia, *independientemente* de la fecha en que se enteró el agraviado.

Mediante Resolución, de fecha 30 de diciembre de 1993, le concedimos término a la parte demandante recurrida para

... mostrar causa por la cual este Tribunal no deba dictar Sentencia revocatoria de la resolución que con fecha 30 de septiembre de 1993 emitiera el Tribunal Superior de Puerto Rico, Sala de San Juan, en el presente caso.

Al día de hoy, la parte demandante recurrida *no* ha comparecido ante este Foro. *Distinto a la mayoría*, y por los fundamentos jurídicos que pasamos a exponer, *revocaríamos la resolución recurrida.*

## II

Nuestro Código Civil reconoce, en su Art. 1868, *supra*, que el término prescriptivo para entablar una reclamación por difamación es de un (1) año.([3]) A su vez, surge del aludido artículo que las acciones derivadas de culpa o negligencia prescriben al año, *comenzando a contar el período prescriptivo desde que lo supo el agraviado.*([4]) Esta situación ha sido denominada como "la doctrina cognoscitiva del daño":

> Como repetidamente hemos señalado, el Art. 1868 del Código Civil dispone que las acciones derivadas de culpa o negligencia prescriben al año, comenzando a contar este período en el momento en que lo supo el agraviado. También hemos indicado que con el apoyo de lo dispuesto en el Art. 1869 del Código Civil es preciso concluir que esta última frase se refiere al momento en que el agraviado tuvo conocimiento de la consecuencia lesiva, esto es, del daño. Por lo tanto, en todo supuesto de prescripción será menester que el Tribunal haga una determinación de cuándo surge ese conocimiento, v.g., cuándo es que ha nacido el daño. Esta norma lleva por fuerza, a la conclusión de que en Puerto Rico se reconoce la doctrina jurídica que concentra su énfasis en el momento del conocimiento del daño, la que hemos denominado "la doctrina cognoscitiva del daño". H.M. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. 2, Cap. X, pág. 637.

Le asiste la razón, *sin embargo*, a la parte demandada peticionaria al aseverar que este Tribunal expresamente adoptó la "regla de la publicación única" *en casos de libelo y calumnia.* Al así hacerlo, expresamos en *Díaz Segarra v. El Vocero*, 105 D.P.R. 850, 852 (1977), que: "la edición com-

---

([3]) Dicho Art. 1868 del Código Civil reza:

"*Sec. 5298. Acciones que prescriben al año*

"Prescriben por el transcurso de un (1) año:

"(1) La acción para recobrar o retener posesión.

"(2) La acción para exigir la responsabilidad civil por injuria o calumnia, y por las obligaciones derivadas de la culpa o negligencia de que se trata en la sec. 5141 de este título desde que lo supo el agraviado." 31 L.P.R.A. sec. 5298.

([4]) Véanse: *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347, 360 (1988); *Colón Prieto v. Géigel*, 115 D.P.R. 232, 243 (1984).

pleta del periódico, revista o libro se considera una *sola publicación* que da lugar en casos de libelo, *a una sola causa de acción*, quedando la extensión del agravio, la distribución y circulación como elementos valorativos de daños." (Énfasis suplido.)

Ahora bien, y no obstante lo antes expuesto, *nunca nos hemos expresado en torno a, si bajo la "regla de la publicación única", se entiende que el término prescriptivo en esta clase de caso empieza a correr desde la fecha misma de la publicación*, como lo han interpretado la mayoría de las jurisdicciones estatales norteamericanas y en la jurisdicción federal.

Reconocemos que "es al ordenamiento jurídico de Puerto Rico al que debe acudirse para sopesar los intereses envueltos en casos de difamación". *Clavell v. El Vocero de P.R.*, 115 D.P.R. 685, 690 (1984). No obstante, debido a que nuestra jurisprudencia a estos efectos es tan limitada, examinamos la jurisprudencia norteamericana, estatal y federal, *por su carácter ilustrativo y persuasivo.* Véase *Clavell v. El Vocero de P.R.*, ante.

### III

Actualmente, y como lo ha reconocido la Corte Suprema de Estados Unidos, la gran mayoría de los estados ha adoptado la "regla de la publicación única". *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984).[5] Los tratadistas norteamericanos coinciden en que hoy en día, en las diferentes jurisdicciones, *predomina mayormente* la doctrina de la publicación única (*single publication*) sobre la de la publicación múltiple (*multiple publication*). En relación con este aspecto, Sanford, expone lo siguiente:[6]

---

[5] Véase, además, *Rinsley v. Brandt*, 446 F. Supp. 850, 853 (D. Kan. 1977).

[6] B.W. Sanford, *Libel and Privacy*, 2da ed., Nueva Jersey, Ed. Prentice Hall Law & Business, 1993, Cap. 13, Sec. 13.2, págs. 625–626. 1 *American Law of Torts* Sec. 5:34, págs. 957–958 (1983); W.L. Prosser, *Handbook of the Law of Torts*, 4ta ed.,

At common law, each time a libelous statement was communicated, it was deemed to have been published, and a *separate cause* of action accrued. *This "multiple publication" rule has been abandoned in the majority of jurisdictions in favor of the "single publication" rule*, which provides that a single integrated publication of numerous copies or prints of libelous material gives rise to only one cause of action. Despite the popularity of the rule, it neither has been unanimously adopted nor has been held to apply to the statute of limitations analysis in all instances. (Énfasis suplido.)

El *propósito, y efecto, de la doctrina de la publicación única* se expuso en *Edwards v. Associated Press*, 512 F.2d 258, 264–265 esc. 19 (5to Cir. 1975), de la manera siguiente:

The *goal* of the single publication rule as to venue *is to protect the defendant from a multiplicity of suits, from a continuous tolling of the statute of limitations*, and from the application of diverse laws to a single event. See Prosser, Law of Torts 87 113 (4th. ed.1971). Rather than accomplish these necessary goals through the jurisdictional statutes, however, they may be more logically effectuated through requiring the plaintiff to collect all his damages in a single action, *measuring the running of the statute of limitations from the initial publication, see e.g., Forman, supra*, 195, Miss. at 107, 14 So. 2d. at 347.([7]) (Énfasis suplido.)

De lo antes citado surge con claridad que para poder lograr el objetivo perseguido por la "regla de la publicación única" *el término prescriptivo para una acción de difamación empieza a correr desde el momento de la publicación.*([8]) Ello así ya que se entiende que, una vez se

Minnesota, West Publishing Co., 1971, Sec. 113, pág. 769; Anotación, *What Constitutes "Publication" of Libel in Order to Start Running of Period of Limitations*, 42 A.L.R.3rd 807, 815 (1972).

([7]) Véanse, en adición: *Wildmon v. Hustler Magazine, Inc.*, 508 F. Supp. 87, 89 (D. Miss. 1980); *Forman v. Mississippi Publishers Corporation*, 14 So. 2d 344, 347 (1943).

([8]) En *Porto y Siurano v. Bentley P.R., Inc.*, 132 D.P.R. 331 (1992), resolvimos que uno de los *elementos esenciales* de la causa de acción por libelo entre personas privadas *es la publicación*. El elemento de publicación se configura cuando la expresión difamatoria es comunicada a una tercera persona, o sea, a otra distinta de la difamada. Véase en adición la Sec. 8 de la Ley de Libelo y Calumnia, 32 L.P.R.A. sec.

publica la información, se le causa el perjuicio *a la reputación* de la persona alegadamente difamada, *independientemente* del hecho de que el difamado se haya enterado o no al momento de la publicación. A estos efectos, en *Wildmon v. Hustler Magazine, Inc.*, 508 F. Supp. 87, 88–89 (D. Miss. 1980) —citando el caso de *Forman v. Mississippi Publishers Corporation*, 14 So. 2d 344, 347–348 (1943)— se expresó que:

"[A] cause of action "accrues" when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested.

. . . . .

In defamation, the assault is not directly upon the plaintiff *but upon his public esteem*. The impact is upon those who are *custodians* of his reputation. *Such reputation ... is injured as soon as a destructive fire of criticism ignites the edifices in which such prestige is housed.*

. . . . .

*There seems to be no doubt that the statute of limitations begins to run from the date of the first publication. ... Since the gravamen of the offense is not the knowledge by the plaintiff nor the injury of his feelings but the degrading of reputation, the right accrued as soon as the paper was exhibited to third persons in whom alone such repute is resident.* The tort is then complete even though the damage may continue or even accumulate."[9] (Énfasis suplido y en el original.)

Esta interpretación, *cónsona con los objetivos de la "regla de la publicación única"*, ya había sido adoptada anteriormente en *Hartmann v. Time*, 64 F. Supp. 671, 679 (D. Penn. 1946) donde una Corte de Distrito Federal para el Distrito de Pensilvania, luego de un análisis jurisprudencial concluyó que

---

3148, donde se hace referencia a la publicación del libelo.

[9] Véase *Guidry v. Durkin*, 834 F.2d 1465, 1470 (9no Cir. 1987).

*... the decided weight of authority in this country is*, where large distributions of published matter are involved, *that the cause of action accrues, for the purpose of the statute of limitations, upon the first publication*, when the issue goes into circulation generally. (Énfasis suplido.)

A su vez, y acorde con esta apreciación, en el caso más reciente de *Fleury v. Harper & Row, Publishers, Inc.*, 698 F.2d 1022, 1027 (9no Cir. 1983), una Corte de Apelaciones federal expresamente resolvió que *"[i]n the case of a single, integrated publication, a cause of action accrues on the first general distribution of the publication to the public"*.[10] (Énfasis suplido y citas omitidas.)

De lo antes expuesto, resulta ser un *hecho irrefutable* que los tribunales federales han establecido, *como norma general*, no sólo que la publicación libelosa constituye una sola causa de acción sino que el período prescriptivo en los casos de difamación *empieza a correr desde el momento de la publicación.* Véanse, en adición: *Fidelity & Deposit Co. of Maryland v. Smith*, 730 F.2d 1026, 1034–1035 (5to Cir. 1984); *Lashlee v. Sumner*, 570 F.2d 107, 109 (6to Cir. 1978); *Foretich v. Glamour*, 753 F. Supp. 955, 961 (D. D.C. 1990); *E.E.O.C. v. Southern Pub. Co., Inc.*, 732 F.Supp. 682, 683 (S.D. Miss. 1988); *Brudne v. Amalgamated Trust & Sav. Bank*, 627 F. Supp. 458, 465 (N.D. Ill. 1986); *Tom Olesker's Excit. W., Inc. v. Dun & Brandstreet, Inc.*, 334 N.E.2d 160 (1975).[11]

*Esta norma, sin embargo, no es absoluta y la referida jurisprudencia federal ha reconocido varias excepciones en casos que no envuelven medios de comunicación masivos tales como prensa, radio y televisión.* En estas situaciones, donde sí se ha aplicado la "doctrina cognoscitiva del daño" *(discovery rule), han estado envueltas circunstancias donde el material alegadamente difamatorio no es fácil de descu-*

---

[10] Véanse, en adición: *Crook v. Peacor*, 579 F. Supp. 853, 856 (D. Mich. 1984); *Tocco v. Time, Inc.*, 195 F. Supp. 410 (D. Mich. 1961).

[11] Para una discusión general al respecto, véanse: 54 C.J.S. sec. 168, 50 Am. Jur.2d sec. 390, pág. 720; Sanford, *op. cit.*, págs. 624–625.

*brir y no está en manos del público en general, como por
ejemplo*: (1) expresiones difamatorias en informes de agencias de crédito, *Tom Olesker's Excit. W., Inc. v. Dun &
Brandstreet, Inc.*, ante;([12]) (2) expresiones difamatorias en
una carta que se incluyó en el expediente personal permanente de una empleada, *Manguso v. Oceanside Unified
Sch. Dist.*, 152 Cal.Rptr. 27 (1979); (3) materia libelosa sobre un empleado despedido contenida en un memorando
preparado por un supervisor para una compañía aseguradora, *White v. Gurnsey*, 618 P.2d 975 (1980); (4) médico que
alegadamente de manera equivocada reportó un diagnóstico de mala condición física del demandante y eso le costó
su empleo, *Armstrong v. Morgan*, 545 S.W.2d 45 (1976); (5)
abogado que hizo representaciones falsas y maliciosas sobre el demandante a la esposa de éste, *Citizens State Bank
of Dickinson v. Shapiro*, 575 S.W.2d 375 (1978); (6) información alegadamente falsa sobre mala conducta de un empleado en un memorando de comercio confidencial, *Kittin-*

---

([12]) En *Rinsley v. Brandt*, ante, pág. 853, se dispuso lo siguiente citando el caso
de *Tom Olesker's Excit. W., Inc. v. Dun & Bradstreet, Inc.*, 334 N.E.2d 160, 161
(1975):

" *'It has been generally held that in defamation cases the cause of action accrues
and the statute of limitation begins to run on the date of publication of the defamatory
material.* [cites ommitted]'

"After explaining the rationale for applying the discovery rule to false credit
reporting cases, the court stated:

" 'We would note that cases involving defamation by credit reporting agencies
can be readily distinguished from those involving alleged defamations through so-called mass media publication. In claimed libels involving, for example, magazines,
books, newspapers, and radio and television programs, the publication has been for
public attention and knowledge and the person commented on, if only in his role as
a member of the public, has had access to such published information. In addition
and more importantly, a credit reporting agency does not enjoy the constitutional
protections given mass media publications. *Grove v. Dun & Bradstreet, Inc.* (3d.
Cir.1971), 438 F.2d 433.'

"The same distinction between defamation by credit reporting and defamation
by mass media was made in *Kelley v. Rinkle*, supra, 532 S.W.2d. at 949:

*"We would not apply the discovery rule where the defamation is made a matter of
public knowledge through such agencies as newspapers or television broadcasts.'* "
(Énfasis suplido.)

Véanse, en adición, los siguientes casos donde se ha aplicado el "discovery rule",
como excepción, por ser información de agencias de crédito: *McKown v. Dun &
Bradstreet, Inc.*, 744 F. Supp. 1046 (D. Kan. 1990); *Sears, Roebuck and Co. v. Ulman*,
412 A.2d 1240 (1980); *Kelley v. Rinkle*, ante.

*ger v. Boeing Co.*, 21 Wash.App. 484, 585 P.2d 812 (Wash.1978).

## IV

Como podemos notar, resulta obvio que la norma general vigente en la esfera federal —a los efectos de que el término prescriptivo en esta clase de casos comienza a contarse desde la fecha misma de la publicación difamatoria— es una que resulta ser *completamente compatible* con la llamada "regla de la publicación única", regla que este tribunal *adoptó* para esta jurisdicción en *Díaz Segarra v. El Vocero*, ante.([13])

En adición, somos del criterio que el razonamiento tras la mencionada *norma general mayoritaria federal* —esbozado en los antes citados casos de *Wildmon v. Hustler Magazine; Forman v. Mississippi Publishers Corporation*, 14 So. 2d 344 (1943), *Hartman v. Time*, y *Fleury v. Harper & Row, Publishers, Inc.*, ante— es uno *completamente lógico*. Como lo que se afecta es la "reputación pública" de la persona a la que se refiere la noticia, o la "opinión" que de esa persona tienen sus conciudadanos, y dicha reputación, no hay duda, queda afectada desde el momento mismo en que se publica la noticia alegadamente libelosa, *que es precisamente por lo que se reclama*, poco importa el momento en que la persona agraviada se entera de la publicación en controversia.

Ahora bien, *no* podemos perder de vista el hecho importantísimo de que en esas jurisdicciones estatales norteamericanas, y en la jurisdicción federal, *no* existe el antes citado Art. 1868 del Código Civil, el cual, en lo pertinente, establece que:

Prescriben por el transcurso de un (1) año:

---

([13]) En *Díaz Segarra v. El Vocero*, 105 D.P.R. 850, 852 (1977), establecimos que "la *edición completa* del periódico, revista o libro, se considera una *sola publicación* que da lugar, en casos de libelo, *a una sola causa de acción*". (Énfasis suplido.)

(1) La acción para recobrar o retener posesión.

(2) La acción para exigir la responsabilidad civil por injuria o calumnia, y por las obligaciones derivadas de la culpa o negligencia de que se trata en la sec. 5141 de este título desde que lo supo el agraviado. 31 L.P.R.A. sec. 5298.

Una rápida lectura de la referida disposición legal produce, *de primera intención*, la impresión de que dicho estatuto niega la posibilidad de que en nuestra jurisdicción pueda ser de aplicación la antes mencionada norma general prevaleciente en la mayoría de las jurisdicciones estatales norteamericanas, y en la jurisdicción federal, a los efectos de que el término prescriptivo en esta clase de casos comienza a contarse desde la fecha misma de la publicación difamatoria. Ello así, en vista de la frase, contenida en el mismo, "desde que lo supo el agraviado".

Procede, *sin embargo*, que nos cuestionemos si dicha frase se aplica *únicamente* a las acciones instadas, derivadas de culpa o negligencia, bajo el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, o si, por el contrario, también se debe entender aplicable a las acciones "para exigir la responsabilidad civil por injuria o calumnia". *La contestación a dicha interrogante, a nuestra manera de ver las cosas, descansa*: en el estudio del historial legislativo, si alguno, de dicha disposición legal; en lo que informan las opiniones de los comentaristas sobre el *punto específico* en controversia, y, en última instancia, en la aplicación, o no, a la situación en controversia de la "regla del último antecedente". *Bowie v. Buscaglia, Tes.*, 63 D.P.R. 546 (1944); *Pueblo v. Vargas Ramírez*, 84 D.P.R. 225 (1961); *Martínez v. Comunidad M. Fajardo*, 90 D.P.R. 461 (1964); *Meléndez v. Tribunal Superior*, 90 D.P.R. 656 (1964).

Como es de todos conocido, el "historial legislativo" respecto al referido Art. 1868 del Código Civil, *supra*, es uno "inexistente". La referida disposición legal fue incorporada en el año 1902, a nuestro ordenamiento jurídico, proveniente del Código Civil español. Por otro lado, una búsqueda exhaustiva —*respecto al punto específico aquí en*

*controversia*— de las obras de los distintos comentaristas del Código Civil español, y del nuestro, ha resultado infructuosa al respecto.([14]) *Dicha situación, a nuestro juicio, permite que exploremos la posibilidad de aplicar al caso ante nuestra consideración la antes mencionada "regla del último antecedente".* Conforme a la misma, las palabras, frases y cláusulas relativas, o modificativas, de un estatuto deben ser aplicadas a las palabras o frases que *inmediatamente* les precedan; *no* debiendo ser aplicadas las mismas, ni extendidas, a las palabras o frases más "remotas". *Meléndez v. Tribunal Superior*, ante.([15])

En el caso específico del antes citado Art. 1868 del Có-

---

([14]) Únicamente hemos encontrado un comentarista que se expresa sobre este tema específico. Éste, sin embargo, no aporta mucho a la correcta solución de la interrogante. Véase M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1994, T. XXV, Vol. 2, págs. 404–406.

([15]) El caso de *Meléndez v. Tribunal Superior*, 90 D.P.R. 656 (1964), es un vivo ejemplo de la aplicación de la mencionada "regla del último antecedente". En el mismo, interpretamos las disposiciones del Art. 4 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 414, el cual establece que:

"Toda persona que posea, porte o conduzca cualquier arma de las comúnmente conocidas como *blackjacks*, cachiporras o manoplas; toda persona que porte o conduzca cualquier arma de las conocidas como cuchillo, puñal, daga, espada, honda, bastón de estoque, arpón, faca, estilete, punzón *o cualquier instrumento similar,* y excepto cuando se portaren o condujeren en ocasión de su uso como instrumentos propios de una arte, deporte, profesión, ocupación u oficio, e incluyendo además las hojas de navajas de afeitar de seguridad y garrotes cuando éstos se sacaren, mostraren o usaren en la comisión de un delito público o en la tentativa de cometerlo; y toda persona que usare contra otra cualquiera de las armas nombradas anteriormente en esta sección será culpable de delito menos grave, y si ha sido convicta previamente de cualquier infracción a este Capítulo, o de cualquiera de los delitos especificados en la sec. 427 de este título, será culpable de delito grave." (Énfasis suplido.)

En dicho caso estaba en controversia, en síntesis y en lo pertinente, el hecho de si el instrumento en controversia en el caso, descrito como una "fusta", era o no un "instrumento similar" a un "blackjack" y, por lo tanto, "penable" como tal. Este Tribunal —luego de expresar que, cuando un estatuto "es susceptible de dos interpretaciones y nada demuestra cuál de ellas tuvo en mente la legislatura, *debe gobernar la puntuación cuando ésta sostenga una interpretación y sea inconsistente con la otra.* Tampoco debe rechazarse una puntuación al interpretar un estatuto cuando [la misma] en realidad ayuda a aclarar y precisar su significado" (énfasis suplido)— *resolvió que* bajo "la regla del último antecedente la frase 'o cualquier instrumento similar' debe aplicarse a la enumeración de armas que *inmediatamente* le precede y *no* a la agrupación de armas más remota". (Énfasis suplido.) *Meléndez v. Tribunal Superior*, ante, págs. 663 y 667. Resolvió el Tribunal, en consecuencia, que la "fusta" ocupada *no* era un "instrumento similar" a un "blackjack" por razón de que no encontraban "en el estatuto la más leve indicación legislativa que impida la aplicación de" la regla del último antecedente. Íd.

digo Civil, la aplicación de la "regla del último antecedente —*y, en especial, en vista de la coma que aparece después de la palabra "calumnia"*— ([16]) nos llevaría a la conclusión de que la frase "desde que lo supo el agraviado" se aplica *únicamente* a las palabras que inmediatamente le preceden, esto es, a las "obligaciones derivadas de la culpa o negligencia de que se trata en la sec. 5141 de éste título", y *no* a las "remotas" palabras, o frase, de la "acción para exigir la responsabilidad civil por injuria o calumnia". 31 L.P.R.A. sec. 5298. Ello, naturalmente, significaría la adopción en nuestra jurisdicción de la antes mencionada norma general mayoritaria, vigente en la jurisdicción federal y en la mayoría de las jurisdicciones estatales norteamericanas, a los efectos de que el término prescriptivo de un (1) año, que establece el antes citado Art. 1868, para reclamar por publicaciones alegadamente difamatorias comienza a correr desde el momento mismo de la publicación de la alegada noticia difamatoria en un periódico de circulación general en Puerto Rico.

La mayoría de los integrantes del Tribunal, como hemos visto, rechaza ese curso de acción por cuanto entiende —en las propias palabras de la mayoría— que "no hay daño" hasta tanto la persona alegadamente difamada se entere de que su reputación ha sido mancillada y que "si no hay daño, no hay acción judicial, pues no hay remedio que proveer". Opinión mayoritaria, pág. 330.

"Salta a la vista y hiere la retina", *In re Roldán González*, 113 D.P.R. 238, 242 (1982), que dicho razonamiento *es totalmente incorrecto*. En primer lugar, es obvio que la mayoría *confunde* el momento de la ocurrencia, o concretización, del "daño" que se reclama con el momento en que la persona, alegadamente, difamada se entera de la noticia publicada. Como expresáramos anteriormente, en casos de esta naturaleza el "daño" es a la "reputación pública" de la persona, esto es, lo que se afecta es la opinión que de esa

---

([16]) Véase *Morales Morales v. Registrador*, 89 D.P.R. 811, 814 (1964).

persona tiene la ciudadanía. *Ello así, llana y sencilla-mente, debido al hecho de que la "reputación" de una persona es lo que otros piensan de ella, no lo que ella piensa de sí misma.*

Siendo ello así, el daño ocurre, o se concreta, tan pronto como la noticia, alegadamente difamatoria, se publica; esto es, tan pronto como la ciudadanía en general tiene conocimiento de la misma; *no*, como erróneamente sostiene la mayoría, en el momento en que la persona se entera de que su reputación ha sido mancillada.

Ahora bien, el hecho de que el daño ocurre, o se concreta, tan pronto como la publicación sale a la luz pública, *no* dispone de la interrogante de cuándo comienza a contarse el término de un (1) año que establece el citado Art. 1868 del Código Civil. Somos del criterio que realmente *no* hay razón jurídica, o de índole alguna, que impida que resolvamos que dicho término prescriptivo comienza a contarse *desde la fecha misma de la publicación de la noticia*. Recuérdese que estamos lidiando con una noticia publicada en un periódico *de circulación general* en el País.

En vista a ello, *procede que nos cuestionemos* por qué razón no se le puede imputar a un ciudadano conocimiento de la publicación, en un periódico de circulación general, de una noticia, alegadamente, difamatoria relativa a él *cuando nuestro ordenamiento jurídico ha reconocido la validez de la notificación del contenido de un edicto, en un periódico de circulación general, contra un demandado en un pleito civil.* Dicho medio de notificación —el del edicto— *ha resistido todo ataque e impugnación relacionada con la cláusula constitucional del debido procedimiento de ley;*[17] ello a pesar del hecho innegable de que prácticamente ninguna persona lee la sección de edictos de los periódicos en que se publican los mismos. Ello no obstante, nuestro ordenamiento le imputa, por "ficción jurídica", conocimiento

---

[17] *Chase Manhattan Bank v. Polanco Martínez*, 131 D.P.R. 530 (1992).

del contenido del edicto al demandado. *Chase Manhattan Bank v. Polanco Martínez*, 131 D.P.R. 530 (1992).

*¿Por qué en un caso se puede imputar conocimiento y en el otro no? ¿No está envuelto, en ambos casos, el mismo principio o fundamento? ¿Cuál es la diferencia? ¿No se le da, de ordinario, más relieve en el periódico a noticias de esta naturaleza que a un edicto?*

En conclusión —y en vista de que: el "daño" que se sufre en esta clase de situaciones lo es en la "reputación pública" de la persona afectada; que ese "daño" ocurre, o se concreta, al momento mismo de la publicación de la noticia alegadamente difamatoria; que para que el daño se concrete no se requiere que el alegado perjudicado se haya enterado de la noticia; que no hay razón jurídica alguna que impida, al igual que en el caso de los edictos, imputarle conocimiento de la noticia publicada en un periódico de circulación general a la persona afectada, y de que ello es completamente compatible y armonizable con la regla, ya vigente en Puerto Rico, de la "publicación única"— *estimamos que este Tribunal debería de establecer que, en esta clase de casos, el término prescriptivo de un (1) año comienza a correr, como regla general, desde la fecha de la publicación de la noticia difamatoria en el periódico o revista, según sea el caso, y no desde la fecha en que se enteró el perjudicado o perjudicados.* Dicha norma general, entre otras, le *daría certeza* a nuestro ordenamiento y a la profesión legal en relación con la litigación de esta clase de casos.([18])

---

([18]) Precisamente debido al hecho de que puede existir más de un perjudicado por una misma noticia en esta clase de casos, que éstos pueden enterarse de la noticia difamatoria en distintas fechas, es que *no* conviene el establecimiento de la norma contraria.

En adición, y bajo el "procedimiento" sui géneris que, motu proprio, ha creado la Mayoría en un acto de "legislación judicial", el demandante que radica su demanda —digamos, a los dos (2) o tres (3) años de la fecha de la publicación de la noticia— derrota el planteamiento de prescripción de la parte demandada *meramente suscribiendo una declaración jurada en que diga que se enteró de la noticia dentro del año de haber radicado su acción.*

Ello, realmente, resulta ser un absurdo.

## V

En el presente caso, la comunidad puertorriqueña fue informada de la, alegadamente libelosa, noticia objeto de la reclamación el día 7 de julio de 1992. Fue en ese día, en el cual los ciudadanos de este País leyeron la noticia, cuando se materializó la alegada "difamación ... que públicamente" se hizo del demandante. 32 L.P.R.A. secs. 3142 y 3148.

Acorde con la norma general que el Tribunal *debería* de haber adoptado, el término prescriptivo de un (1) año empezó a transcurrir desde ese día 7 de julio de 1992. En consecuencia, el alegado perjudicado por dicha noticia, el demandante recurrido Héctor Ojeda Ojeda, tenía hasta el 7 de julio de 1993 para presentar la demanda correspondiente ante el foro judicial; ello en vista de que en la antes mencionada fecha venció el término de trescientos sesenta y cinco (365) días.[19] El demandante Ojeda Ojeda, como expresáramos anteriormente, radicó la demanda el día 9 de julio de 1993; *fecha en que, acorde con lo que sostenemos, ya había prescrito su causa de acción.*[20]

Conforme a la posición que proponemos, *nos restaría por determinar* si el hecho de que el demandante Ojeda Ojeda estaba recluido en prisión el día en que se publicó la noticia, esto es, el 7 de julio de 1992, varía o afecta la conclusión a la que anteriormente hemos llegado. *Contestamos en la negativa*; ello en vista de lo resuelto por este Tribunal en *Sierra Serpa v. Martínez et al.*, 132 D.P.R. 670 (1993).

En el citado caso de *Sierra Serpa v. Martínez et al.*, ante, este Tribunal resolvió que la aprobación del Código

---

[19] A los efectos del cómputo de término para la prescripción de acciones, *debe entenderse que el año consta de trescientos sesenta y cinco (365) días.* Sin embargo, si resulta que el mes de febrero de un año bisiesto queda comprendido en el término, el año se considerará de trescientos sesenta y seis (366) días. *Escalera v. Andino*, 76 D.P.R. 268 (1954); *Sánchez v. Cooperativa Azucarera*, 66 D.P.R. 346 (1946).

[20] A su vez, aclaramos el hecho que el año de prescripción —trescientos sesenta y cinco (365) días— *comienza a contarse desde el día siguiente a la publicación*, o sea, desde el 8 de julio de 1992, según lo requiere la Regla 68.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Penal de 1974 eliminó, o extinguió, la pérdida de los derechos civiles por parte de los reclusos y causó la derogación tácita del Art. 40 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 240; disposición que excluía del cómputo del término prescriptivo, exigido para radicar una acción en particular, el período de tiempo durante el cual la parte actora estuviera recluida en una institución penal.[21] Aparte de ello, a los hechos del presente caso *no* le es aplicable ninguna de las excepciones —ni su razonamiento— a la regla general que proponemos que han sido reconocidas en la jurisdicción federal y en las jurisdicciones estatales norteamericanas.

Por los fundamentos antes expuestos, *expediríamos* el auto de revisión solicitado y *dictaríamos* Sentencia *revoca-*

---

[21] En el citado caso de *Sierra Serpa v. Martínez et al.*, 132 D.P.R. 670, 673–674 (1993), expresamos, *en lo pertinente*, que:

"Fundamentados en el mismo razonamiento, sostenemos ahora que la extinción de la pérdida de derechos civiles al aprobarse el Código Penal de 1974 produjo la derogación tácita del Art. 40(3) del Código de Enjuiciamiento Civil, *supra*, que excluía del tiempo fijado para ejercitar la acción el término de incapacidad por reclusión en la cárcel. De otro modo se crearía para el litigante potencial preso un privilegio o excepción a la regla de prescripción, no disponible para el que no delinque, lo cual es incompatible con la política pública de igualdad ante la ley. La interpretación de las leyes debe evadir resultados absurdos. *Díaz Marín v. Mun. de San Juan*, 117 D.P.R. 334, 342 (1986).

"Eliminada y desterrada la sanción de suspensión de los derechos civiles de aquellos convictos encarcelados en ejecución de sentencia en causa criminal, la disposición del Código de Enjuiciamiento Civil citada se derrumbó por falta de fundamento concordante. Más que derogación implícita, estamos ante un colapso total de la disposición adjetiva desprovista de fundamento sustantivo: abolida la pena de pérdida o suspensión de los derechos civiles, se perdió la virtud remediadora. A fin de cuentas, como dijimos en *Márquez v. Tribl. Superior*, 85 D.P.R. 559, 562 (1962), '[e]l propósito de la excepción contenida en el ... Artículo 40 es proteger los intereses de los incapaces hasta el momento en que adquieren la capacidad jurídica necesaria para hacer valer sus derechos'."

Véanse, en adición, los siguientes casos federales donde se ha resuelto que en ausencia de legislación al respecto, el encarcelamiento de un demandante no interrumpe el término prescriptivo de una acción civil: *Proctor v. Flex*, 567 F.2d 635, 636 (5to Cir. 1978); *Kissinger v. Foti*, 544 F.2d 1257, 1258 (5to Cir. 1977); *Harrison v. Wright*, 457 F.2d 793 (6to Cir. 1972); *Williams v. Hollins*, 428 F.2d 1221 (6to Cir. 1970); *Jones v. Bombeck*, 375 F.2d 737, 739 (3er Cir. 1967); *Rich v. Commissioner of Internal Revenue*, 250 F.2d 171, 175 (5to Cir. 1957); *Sierra-Serpa v. Martínez*, 777 F. Supp. 126 (D. P.R.1991); *Battle v. Lawson*, 352 F. Supp. 156, 158 (1972).

Para una discusión general al respecto, véanse: 51 Am.Jur.2d sec. 192, pág. 759 (1970); 54 C.J.S. sec. 115; Anotación, *Imprisonment of Party to Civil Action as Tolling Statute of Limitation*, 77 A.L.R.3rd 735 (1977).

*toria* de la resolución emitida por el Tribunal Superior de Puerto Rico, Sala de San Juan, de fecha 20 de septiembre de 1993, decretando que procede la desestimación de la demanda radicada por Héctor Ojeda Ojeda ante dicho foro judicial por razón de que la misma fue radicada fuera del término de prescripción de un (1) año que establece el antes citado Art. 1868 del Código Civil de Puerto Rico.