ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| JDS REAL ESTATE LLC, JULIO ORTIZ ROSARIO Y ANYELIS LOZADA CARRASCO, por sí y en representación de la Sociedad Legal de Gananciales compuesta por ambos<br><br>Apelada<br><br>v.<br><br>MARIELIZ ARROYO FIGUEROA<br><br>Apelante | **TA2025AP00160** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Civil Núm. BY2022CV02022<br><br>Sobre: Difamación, Daños y Perjuicios; Fondos Consignados |

Panel integrado por su presidenta la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 11 de septiembre de 2025.

Comparece ante este foro la Sra. Marieliz Arroyo Figueroa (señora Arroyo o "la apelante") y nos solicita que revisemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, notificada el 20 de junio de 2025. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* la demanda instada por JDS Real Estate LLC; Julio Ortiz Rosario (señor Ortiz) y Anyelis Lozada Carrasco, por sí y en representación de la Sociedad Legal de Gananciales compuesta por ambos (JDS o "parte apelante"). Por consiguiente, ordenó a la Sra. Marieliz Arroyo Figueroa (señora Arroyo o "la apelante") a pagar la cantidad de $3,330.00 en concepto de comisión y $3,330.00 por los sufrimientos y angustias

mentales. A su vez, desestimó la reconvención instada por la apelante.

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** la *Sentencia* apelada.

## I.

El 21 de abril de 2022, JDS presentó una *Demanda* sobre difamación, y daños y perjuicios, en contra de la señora Arroyo y el Sr. Richard Hernández Sierra (señor Hernández), como parte indispensable.[1] En síntesis, alegó que el 15 de febrero de 2022, el señor Hernández y la señora Arroyo suscribieron un *Contrato de Opción de Compra* (Contrato),[2] sobre una propiedad ubicada en el Municipio de Toa Alta, por la suma de $115,000.00. Añadió que, la apelante entregó la suma de $2,500.00, como depósito de buena fe. Dicho *Contrato* establecía que el término de la opción sería de 60 días naturales, y extensiones de tiempo se darían según fueran necesarios. A su vez, esbozó que la cláusula noveno del *Contrato* disponía que "[l]as partes entienden y aceptan que el Sr. Julio Ortiz Rosario (Lic. 19049) representante de JDS Real Estate como Corredor de Bienes Raíces y no serán responsable por el incumplimiento en que puedan incurrir las partes principales en este contrato."

Posteriormente, JDS arguyó que el 24 de marzo de 2022, la apelante solicitó un "*Addendum*" en el que estableciera el precio ajustado de venta de la propiedad por la suma de $111,000.00.[3] No obstante, alegó que el

---

[1] *Demanda*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). El 19 de agosto de 2024, el foro primario le anotó la rebeldía al señor Hernández. Véase, *Orden*, entrada núm. 84 en SUMAC.
[2] Véase, anejo I en la *Demanda*.
[3] Véase, anejo II en la *Demanda*.

señor Hernández había rechazado firmar el "*Addendum*", puesto que, otros compradores estaban dispuestos a pagar los $4,000.00 faltantes, pero que estaba dispuesto a dejar el precio de venta en $111,000.00, si la transacción se completaba en el término de 60 días del contrato, entiéndase hasta el 16 de abril de 2022. Sin embargo, sostuvo que la señora Arroyo nunca firmó el "*Addemdum Final*", por lo que, vencido el término acordado, este quedó cancelado. Finalmente, mencionó que intentó comunicarse con la apelante para devolver el depósito entregado, pero que nunca le proveyó el número de cuenta. Así las cosas, expresó que el 16 de abril de 2022, la señora Arroyo subió a la red social "*Facebook*",[4] de manera pública, una fotografía del señor Ortiz junto a su familia, con un mensaje que decía:

> Bueno fui estafada por esta persona para la compra de una casa. Tengan cuidado a aquellos que buscan comprar te dice mil cosas, hacen un contrato y luego quieren cambiar todo a su gusto, y obligarte a firmar adendums para cambiar las reglas del juego para después opcionar la casa que tenías opcionada y habías pagado a otra persona. Después de que pagaste todo el proceso en el banco y entregaste toda la documentación te cancela, porque le da la gana, cuando ya tenía todo listo en el banco, le escribo y me dice ya opcione la casa a alguien más. No solo es la pérdida de dinero del banco, es la pérdida de tiempo, el que no cumple con su palabra, ni con las estipulaciones del contrato. Y el que después de que iba a opcionar otra casa, me hizo cambiar el cheque de gerente a la casa que el vendía ofreciéndome las mismas condiciones de la casa anterior, para que yo desistiera de la otra casa y ahora dejarme en la calle. #ToaAlta #Bayamón #fraude #estafa #viralpost #robo #policiapuertorico

---

[4] Véase, anejo III y IIIa en la *Demanda*.

Por tal motivo, solicitó una indemnización por daños alegadamente sufridos como consecuencia de la publicación falsa y difamatoria.

El 5 de julio de 2022, la señora Arroyo presentó su *Contestación a Demanda y Reconvención*, en la que negó la mayoría de las alegaciones incoadas en su contra.[5] Sin embargo, añadió que se negó a firmar el "*Addendum*", dado que cambió el término de extensión, pudiendo perder la oportunidad de adquirir la elegibilidad de vivienda. A su vez, alegó que el 28 de abril de 2022, recibió la elegibilidad de vivienda, y al notificarle a la parte apelada, le informaron que habían opcionado la propiedad a otra persona. Además, sostuvo que la solicitud de la cuenta de banco ocurrió, pero cuando estaba vigente la solicitud de término adicional. Finalmente, afirmó que escribió en su página de "*Facebook*" personal, un mensaje con información cierta de su experiencia, y que dicha página es privada.

De otra parte, en la *Reconvención*, alegó que perdió el incentivo de vivienda de más de $20,000.00; gastos pagados al Banco; la oportunidad de comprar otra propiedad y le reclamó la devolución del depósito. Por ello, solicitó una indemnización por daños emocionales en una suma no menor de $100,000.00.

El 25 de julio de 2022, JDS presentó una *Réplica a Reconvención*.[6] Mediante la cual, negó la mayoría de las alegaciones en la reconvención. No obstante, esbozó que el dinero del depósito había sido consignado en el Tribunal.

---

[5] *Contestación a Demanda y Reconvención*, entrada núm. 19 en SUMAC.
[6] *Réplica a Reconvención*, entrada núm. 23 en SUMAC.

Luego de varias incidencias procesales, el 24 de septiembre de 2024, fue celebrado el *Juicio en su Fondo*.[7]

Examinados los planteamientos esbozados, el 20 de junio de 2025, el foro primario notificó la *Sentencia* apelada, donde formuló las siguientes determinaciones de hechos:[8]

1. Julio Ortiz fue el corredor de bienes raíces contratado para la venta de una propiedad en Toa Alta Heights.

2. La parte demandada es Marieliz Arroyo Figueroa es maestra del Departamento de educación y Coordinadora.

3. El 2 de febrero de 2022 la demandada vio la propiedad y le informó al corredor de bienes raíces que estaba interesada en adquirir la misma.

4. El 15 de febrero de 2022, las partes firmaron Contrato de Opción de Compra con relación a la propiedad localizada en Toa Alta Heights.

5. La demandada-reconveniente entregó a la demandante JDS Real Estate, LLC, un cheque por la suma de dos mil quinientos $2,500.00 dólares en concepto de depósito con el ánimo de opcionar la propiedad en cuestión. El préstamo que iba gestionar para la compra de la casa era con fondos CDBG para una primera residencia.

6. El precio de compraventa de antedicha propiedad fue de Ciento Quince Mil ($115,000.00) dólares.

7. Dicha cantidad, a solicitud de la parte demandada-reconveniente fue ajustada a Ciento Once Mil ($111,000.00) dólares.

8. La Cláusula "Quinto" del Contrato de Opción de Compra establece que el término para ejercer la opción era de sesenta (60) días a cambio del depósito de buena fe y que extensiones de tiempo se darían según fuese necesario.

9. El Sr. Richard Hernández Sierra contrató a Julio Ortiz como corredor de bienes raíces para la venta de una propiedad en Toa Alta Heights. Este último consiguió a una persona, a la demandada Marieliz Arroyo Figueroa, para el contrato de opción a compra por el precio de $115,000 el cual fue firmado por ambas partes el 15 de febrero de 2022.[9] Se le solicitó a la demandada una cantidad de dinero como depósito para el contrato de opción a compraventa.

---

[7] *Minuta*, entrada núm. 87 en SUMAC.
[8] *Sentencia*, entrada núm.
[9] Exhibit 1 estipulado.

10. El contrato de opción a compra señalaba que la parte tenía 60 días para llevar a cabo la opción de compra. No se hizo documento de extensión de término. La propiedad tasó $111,000, por lo que el precio de venta se ajustó por el precio de tasación. Se hizo un Adendum al contrato de opción a compra el cual estaría vigente hasta el 16 de abril de 2022.[10] El Adendum solo está firmado por el demandante, no hay firma de la compradora. El Sr. Richard Sierra nunca supo por qué no se firmó el contrato por la compradora. El realtor le iba a dar los 60 días a la compradora, ésta nunca firmó el Adendum. El Sr. Sierra le dio la propiedad a otro realtor para venderla al ver una publicación en Facebook bajo el nombre de Arroyo Mery.[11]

11. La publicación de Facebook fue hecha por la demandada Marieliz Arroyo y decía lo siguiente:

Bueno fui estafada por esta persona para la compra de una casa. Tengan cuidado a aquellos que buscan comprar te dice mil cosas, hacen un contrato y luego quieren cambiar todo a su gusto, y obligarte a firmar adendums para cambiar las reglas del juego para después opcionar la casa que tenías opcionada y habías pagado a otra persona. Después de que pagaste todo el proceso en el banco y entregaste toda la documentación te cancela, porque le da la gana, cuando ya tenía todo listo en el banco, le escribo y me dice ya opcione la casa a alguien más. No solo es la pérdida de dinero del banco, es la pérdida de tiempo, el que no cumple con su palabra, ni con las estipulaciones del contrato. Y el que después de que iba a opcionar otra casa, me hizo cambiar el cheque de gerente a la casa que el vendía ofreciéndome las mismas condiciones de la casa anterior, para que yo desistiera de la otra casa y ahora dejarme en la calle.

12. Este escrito de Facebook estaba público y se encontraba adjunto a la foto de perfil del demandante Julio Ortiz Rosario junto a su esposa e hijo menor de edad.

13. El Sr. Richard Sierra llamó al demandante y le dijo "mira aquí están hablando de tu realtor". Al ver esa publicación dejó de utilizar al demandante como corredor de bienes raíces y le dio la propiedad a otro realtor para vender. El Sr. Richard Sierra se dedica a comprar casas para remodelarlas y venderlas, aproximadamente como tres casas al año. No volvió a utilizar al demandante como corredor de bienes raíces.

14. La parte demandante iba a cobrar en comisión por la venta de la casa un 3% del valor total de la venta. Como parte del mercadeo a la propiedad del Sr. Richard Serra el demandante tomó fotos, hizo comunicado en redes sociales, en páginas de internet, recibió llamadas para

---

[10] Exhibit 2 estipulado.
[11] Exhibit 1a y 1b de la parte demandante.

canalizar y dar citas a ver la propiedad. El demandante recibió a varios clientes, pero de éstos el seleccionó a la demandada Marieliz Arroyo. La demandada Arroyo trajo una carta de precualificación a un préstamo hipotecario, mostraba ser una clienta dispuesta y capaza para la compra de la casa. La demandada hizo un depósito de $2,500 como parte del contrato de opción. Lo que ocurriría con ese depósito depende si se daba la venta o no antes del 16 de abril de 2022.

15. El 22 de marzo de 2022 el demandante hizo un adendum al contrato de opción y se lo envió a la demandada el 25 de marzo de 2022.[12] El vendedor firmó el adendum, pero la demandada Arroyo no lo firmó. La demandada informó que no estaba de acuerdo con los términos por lo que no lo iba a firmar. El demandante le informó que tendría hasta el 28 de marzo de 2022 para firmarlo y que el término inicial del contrato de opción a compraventa seguía transcurriendo.

16. El 16 de abril de 2022 era la fecha límite para ejercer la opción a compraventa. La parte demandada quería más tiempo, pero no quiso firmar el adendum. El adendum reducía el previo de venta a $111,000 pero el término para ejercer la opción de compraventa no se modificaba. La parte demandante le dio la oportunidad a la demandada de cancelar el contrato, devolverle el dinero que había dado de opción y le pidió el número de cuenta bancaria para depositarlo.

17. Si el término para ejercer la opción transcurría sin ejercerla, se perdería el depósito de buena fe. El 18 de abril de 2022 el demandante envió otro correo electrónico para solicitar el número de cuenta bancaria para devolverle el depósito.

18. El 18 de abril de 2022 el Sr. Richard Sierra lo llama y le informa al demandante que la demandada está tratando de comunicarse con el por Facebook. El 19 de abril de 2022 entre 7:00 p.m. a 8:00 p.m. el Sr. Richard Sierra se comunica con el demandante y le dice "mira lo que hay en las redes sociales, por Facebook". Cuando el demandante busca la publicación en Facebook a la cual el Sr. Richard Sierra hacía referencia, era en la cuenta de la demandada, y además del texto estaba compartida la imagen del perfil del demandante donde estaba junto a su esposa e hijo menor de edad. El escrito hacía alegaciones de ser estafada, que le habían robado dinero y utilizó unos hashtags de robo, "viral post" y Policía de Puerto Rico.

19. Al ver la publicación el demandante se puso nervioso y triste. Llamó a varios colegas y al día siguiente llamó a su abogado. El Sr. Richard Sierra no volvió a contratar al demandante como corredor de bienes raíces. Luego que la codemandada Arroyo fue emplazada borró la publicación de Facebook. Hasta el momento no ha visto alguna publicación para rectificar lo dicho por ésta.

---

[12] Exhibit 2 por estipulación.

20. El dinero que la demandada había dado como opción a compraventa lo consignó en el Tribunal para un total de $2,350, de esa cifra $350 es lo que cobra por unos servicios.

21. La parte demandada aceptó que hizo la publicación en Facebook porque no quería "que les pasara a otros lo que le pasó a ella".

En virtud de las anteriores determinaciones de hechos, el foro primario concluyó que la publicación hecha por la apelante era falsa, dado que, no había sido "estafada". Indicó que la señora Arroyo al no firmar el "*Addendum*" prevaleció el primer *Contrato* el cual tenía una fecha específica para ejercer la opción de compra y la extensión de tiempo no fue otorgada o negociada posteriormente. Determinó que la apelante había sido negligente al escribir el mensaje de manera pública. Por consiguiente, declaró Ha Lugar la demanda, ordenó a la señora Arroyo a pagar la cantidad $3,330.00 en concepto de la comisión que hubiera recibido el señor Ortiz por la venta de la casa y $3,300.00 por sufrimientos y angustias mentales. Finalmente, desestimó la reconvención y ordenó el cierre y archivo del caso con perjuicio.

En desacuerdo, el 7 de julio de 2025, la apelante, por derecho propio, presentó una moción de reconsideración.[13] No obstante, el 9 de julio de 2025, el foro primario notificó una *Orden*, en la que le indicó que tenía que presentar la moción a través de su abogado de récord.[14] Así pues, el 10 de julio de 2025, fue presentada una *Moción Solicitando Reconsideración de la Sentencia*.[15]

---

[13] *Moción de Reconsideración y Enmienda de Sentencia*, entrada núm. 95 en SUMAC.
[14] *Orden*, entrada núm. 96 en SUMAC.
[15] *Moción Solicitando Reconsideración de la Sentencia*, entrada núm. 97 en SUMAC.

Sin embargo, el 21 de julio de 2025,[16] la señora Arroyo presentó el recurso de epígrafe y planteó los siguientes señalamientos de error:

> A. ERRO EL TRIBUNAL DE INSTANCIA AL ORDENAR A LA PETICIONARIA A REALIZAR UN PAGO DE $3,330.00 POR UNA COMISIÓN QUE HUBIERA RECIBIDO LA PARTE DEMANDANTE DE HABERSE PERFECCIONADO LA COMPRAVENTA DE LA CASA.
>
> B. ERRÓ EL TRIBUNAL DE INSTANCIA AL CONCEDER UNA PARTIDA DE $3,330.00 POR ALEGADOS SUFRIMIENTOS Y ANGUSTIAS MENTALES A FAVOR DE LA PARTE DEMANDANTE.

El 3 de septiembre de 2025, JDS presentó su *Alegato en Oposición*. En esencia, alega que el foro primario no cometió ningún abuso de su discreción y mucho menos actuó con perjuicio y parcialidad contra alguna de las partes.

Con el beneficio de la comparecencia de las partes, procedemos a atender el recurso.

## II.

### -A-

En nuestro ordenamiento jurídico, la protección en contra de las expresiones difamatorias proviene de la Constitución del Estado Libre Asociado de Puerto Rico, de la *Ley de Libelo y Calumnia,* del 19 de febrero de 1902, 32 LPRA secs. 3141- 3149, y del Artículo 1536 del Código Civil de 2020, 31 LPRA sec. 10801. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123 (2013); *Giménez Álvarez v. Silén Maldonado*, 131 DPR 91, 97-98 (1992). El Artículo 1536 del vigente Código Civil, *supra*, es la

---

[16] El 15 de agosto de 2025, emitimos una *Resolución*, concediéndole a la apelante un término de cinco (5) días, para que mostrara causa por la cual no debíamos desestimar el recurso por falta de jurisdicción. El 21 de agosto de 2025, la señora Arroyo presentó una *Moción en Cumplimiento de Orden,* mediante la cual detalló que la *Sentencia* apelada había sido emitida el 20 de junio de 2025, las partes tenían hasta el 7 de julio de 2025 para presentar una moción de reconsideración, sin embargo, el abogado de la apelante presentó dicha moción el 8 de julio de 2025. Por ello, expirado el término para presentar la moción de reconsideración, la moción presentada resultó inoficiosa. Posteriormente, la señora Arroyo presentó el recurso de epígrafe, dentro del término jurisdiccional.

fuente de protección civil contra ataques difamatorios. *Cacho González v. Santarrosa,* 203 DPR 215, 227 (2019), citando a *Colón Pérez v. Televicentro*, 175 DPR 690, 726 (2009).

La difamación ha sido definida como la expresión falsa que constituye un ataque al honor, dignidad y reputación de una persona. La acción de daños y perjuicios por difamación reconocida en Puerto Rico incluye "libelo" y "calumnia". *Ojeda v. El Vocero de PR*, 137 DPR 315, 325 (1994). Para que prospere una causa de acción por "libelo", el promovente de dicha acción debe probar que la información que se reputa difamatoria es falsa, que esta fue publicada por cualquier medio escrito de comunicación, que se refiere a la persona del difamado en particular y que le ocasionó daños reales. *Soc. De Gananciales v. El Vocero de PR*, 135 DPR 122, 129 (1994); *Villanueva v. Hernández Class,* 128 DPR 618, 642 (1991). Por otro lado, la "calumnia" se configura cuando la expresión difamatoria es oral. *Ojeda v. El Vocero de PR,* supra, pág. 326.

El daño como consecuencia de la difamación es el menoscabo de la opinión que tienen los demás sobre el valor de una persona en particular. *Ojeda v. El Vocero de PR,* supra, pág. 329. A su vez, se refiere a la lesión causada a la reputación y a las relaciones en la comunidad, resultantes de la actuación difamatoria, tales como daños morales y angustias mentales. Para que se configure es imprescindible que la persona se entere que su honor ha sido perjudicado, menospreciado o desacreditado. *Ojeda v. El Vocero de PR*, supra.

La publicación de la expresión falsa y difamatoria es un elemento esencial para esta causa de acción. *Ojeda*

*v. El Vocero de PR*, supra. Sin embargo, en el caso de la persona privada, el mero hecho de que la información sea falsa no significa que tendrá derecho a ser indemnizada, salvo que demuestre que la imputación sobre su persona fue hecha de forma negligente. *Íd.*, pág. 328. A esos efectos, para que progrese una causa de acción de daños y perjuicios por difamación es ineludible evidenciar la ocurrencia de un acto u omisión culposo o negligente que produjo un daño y el nexo causal entre ambos. *Íd.*, pág. 329.

El propósito de la acción por difamación es resarcir el daño a la reputación personal de quien fue injuriado públicamente. *Soc. De Gananciales v. El Vocero de PR,* supra, pág. 127. En particular, protegiendo las relaciones actuales y futuras del promovente de la acción con terceros, cuidando su imagen pública y evitando cualquier efecto negativo a su imagen. *Íd.*, págs. 126-127.

Cabe señalar que, la acción por difamación continúa siendo una acción torticera intencional, en cuanto a funcionarios y figuras públicas, y una acción de daños y perjuicios basada en negligencia, cuando el supuesto perjudicado es una persona privada. *Colón, Ramírez v. Televicentro de PR*, supra, pág. 704.

Los criterios que debe utilizar un tribunal para determinar, en una acción específica de difamación, si la persona demandada incurrió en negligencia al hacer la publicación alegadamente libelosa son: (1) la naturaleza de la información publicada, la importancia del asunto de que se trata y especialmente si ésta es difamatoria de su propia faz y puede preverse el riesgo de daños; (2) origen de la información y confiabilidad de su

fuente; y (3) razonabilidad del cotejo de la veracidad de la información tomando en consideración el costo en términos de dinero, tiempo, personal, urgencia de la publicación, carácter de la noticia y cualquier otro factor pertinente. *Colón Pérez v. Televicentro PR,* supra, pág. 708, citando a *Torres Silva v. El Mundo, Inc.,* supra.

**-B-**

Nuestro Tribunal Supremo ha expresado que dado lo difícil y angustiosa que es la labor de estimación de daños, los tribunales de instancia, de ordinario, están en una mejor posición que los tribunales apelativos para evaluar la situación por cuanto son los que tienen contacto directo con la prueba que a esos efectos presenta la parte que los reclama. *Rodríguez Cancel v. AEE,* 116 DPR 443 (1985); *Publio Díaz v. ELA*, 106 DPR 854 (1978). Justamente porque son los tribunales de primera instancia los que tienen contacto de primera mano con la evidencia, por regla general, los foros apelativos se abstendrán de intervenir con el monto impuesto por los tribunales inferiores. *Rodríguez Cancel v. AEE,* supra; *Valldejuli Rodríguez v. AAA,* 99 DPR 917 (1971).

A tenor con este principio de abstención, los tribunales apelativos no deben intervenir con la apreciación de la prueba y con la determinación de daños que un tribunal de instancia haya emitido, a menos que las cuantías concedidas sean ridículamente bajas o exageradamente altas. *Vázquez Figueroa v. ELA* 172 DPR 150 (2007).

En cuanto al ejercicio de cómo fijar las cuantías a pagar en casos de daños y perjuicios, nuestro más Alto Foro ha expresado que a los fines de determinar si la

valorización de los daños en un caso específico es o no adecuada, ciertamente resulta de utilidad examinar las cuantías concedidas por este Tribunal en casos similares anteriores, sin que ello implique que estos se puedan considerar como precedentes obligatorios. *Agosto Vázquez v. Woolworth*, 143 DPR 76 (1997). Además, dichas indemnizaciones en casos anteriores constituyen un punto de partida y deben ser ajustadas al valor presente, tomando en consideración el costo de la vida y el poder adquisitivo del dólar. *Herrera Bolívar v. Ramírez Torres*, 179 DPR 774 (2010).

De otra parte, en *Santiago Montañez v. Fresenius Medical Care et al.*, 195 DPR 476 (2016), nuestro Tribunal Supremo reafirmó los postulados de estimación y valoración de daños vigentes en nuestro estado de derecho, los cuales citamos a continuación:

> "[…] hemos expresado reiteradamente que los tribunales revisores no debemos intervenir con las determinaciones de los foros de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 753 (2013); *Rodríguez et al. v. Hospital et al*, 186 DPR 889, 908-909 (2012); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Álvarez v. Rivera*, 165 DPR 1, 25 (2005). En lo atinente a las acciones de daños y perjuicios, hemos reconocido que la tarea judicial de estimar y valorar los daños es difícil y angustiosa, debido a que no existe un sistema de computación que permita llegar a un resultado exacto con el cual todas las partes queden complacidas y satisfechas. *Rodríguez et al. v. Hospital et al.*, supra, pág. 909; *Herrera, Rivera v. SLG Ramírez-Vicéns*, 179 DPR 774, 784 (2010); *Publio Díaz v. ELA*, supra, pág. 867; *Urrutia v. AAA*, 103 DPR 643, 647 (1975). Es por ello que establecimos que los tribunales apelativos no deben intervenir con la valoración de daños que realiza el foro primario, salvo cuando la cuantía concedida resulte ridículamente baja o exageradamente alta. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 203 (2013); *Rodríguez et al. v. Hospital et al.*, supra, pág. 909; *Herrera, Rivera v. SLG Ramírez-Vicéns*, supra, págs. 784-785; *Publio Díaz v. ELA*, supra, pág. 868; *Urrutia v. AAA*, supra, págs. 647-648. Esto es así ya que ese ejercicio de valoración de daños involucra cierto grado de especulación y elementos

subjetivos, tales como la discreción y el sentido de justicia y conciencia humana del juzgador de los hechos. *Herrera, Rivera v. SLG Ramírez-Vicéns,* supra, pág. 785; *Publio Díaz v. ELA,* supra, págs. 867-868; *Urrutia v. AAA,* supra, pág. 647. Además, es el foro primario el que tiene contacto directo con la prueba testifical presentada y, por ende, el que está en mejor posición de emitir un juicio sobre la valorización de daños. *Rodríguez et al. v. Hospital et al.,* supra, pág. 909; *Herrera, Rivera v. SLG Ramírez-Vicéns,* supra, pág. 785.

De igual modo, hemos destacado que para evaluar si la compensación concedida por el Tribunal de Primera Instancia es ridículamente baja o exageradamente alta, debemos examinar la prueba desfilada ante ese foro y las cuantías otorgadas en casos similares resueltos anteriormente. *Herrera, Rivera v. SLG Ramírez-Vicéns*, supra, pág. 785. En ese sentido, concluimos que las indemnizaciones concedidas en casos anteriores constituyen un punto de partida y referencia útil para pasar juicio sobre las concesiones otorgadas por el foro primario. *Rodríguez et al. v. Hospital et al.*, supra, págs. 909-910; *Herrera, Rivera v. SLG Ramírez-Vicéns,* supra, pág. 785. Ello es así aun cuando reconocemos que no existen dos casos exactamente iguales y que cada caso es distinguible según sus circunstancias particulares. *Herrera, Rivera v. SLG Ramírez-Vicéns*, supra, pág. 785. En todo caso, estas compensaciones otorgadas en casos anteriores deben ajustarse a su valor presente. *Meléndez Vega v. El Vocero de PR*, supra, pág. 204; *Rodríguez et. al. v. Hospital et al.*, supra, pág. 910; *Herrera, Rivera v. SLG Ramírez-Vicéns,* supra, pág. 785". *Íd.*, a las págs. 490 491.

### III.

En el caso de autos, la señora Arroyo nos solicita que revisemos la *Sentencia* emitida el 20 de junio de 2025. Para ello, nos plantea dos señalamientos de error. En el primero alega que incidió el foro primario al ordenarle pagar $3,330.00 por la comisión que hubiera recibido el apelado de haberse perfeccionado la compraventa. Sobre esto, la señora Arroyo menciona que días antes de vencerse el término original del contrato y de la publicación en las redes, el vendedor optó por darle la opción de compra a un tercero. Por lo que, el foro primario erró al imponerle el pago por una alegada comisión dejada de cobrar, independientemente de los actos u omisiones cometidos.

En cuanto a su segundo señalamiento de error, arguye que erró el foro primario al concederle una partida de $3,330.00 al apelado por alegados sufrimientos y angustias mentales. Añade que, durante el juicio no se presentó prueba documental, ni testifical que sustentara las alegadas pérdidas que el apelado sufrió como consecuencia de la publicación. Finalmente, sostiene que el alegado daño sufrido por la pérdida de la comisión tampoco procedía, dado que la posibilidad de haberla cobrado fue frustrada antes de la publicación en la red social. Reitera que, cuando publicó su expresión en la red social, el contrato ya había dejado de existir.

Por su parte, JDS resalta que los errores señalados atacan la apreciación de la prueba y la correcta adjudicación de credibilidad que hizo el foro *a quo* de los testimonios presentados en el juicio en torno a los daños reclamados por la señora Arroyo. Por ello, alega que este foro no puede pasar juicio sobre la prueba oral y los testimonios presentados ante el foro de instancia. Así pues, solicita se confirme la *Sentencia*, la cual declara *Ha Lugar* la *Demanda* y desestima la *Reconvención*.

Es norma reiterada que, en una acción por difamación, el objeto de derecho es la reputación personal del sujeto injuriado públicamente y con ello busca: (1) proteger las relaciones que sostiene con terceros; (2) proteger la probabilidad de relaciones futuras con terceros; (3) proteger su imagen pública en general, y (4) evitar que se le cree una imagen pública negativa si careciere de reconocimiento público en el presente. *Soc. de Gananciales v. Vocero de PR*, supra. Por consiguiente, en un caso de daños por libelo, la

parte demandante tiene el peso de probar básicamente, que la información publicada es falsa, que ello se debió a la negligencia del medio que publicó la información, y que la parte perjudicada sufrió daños reales, que la causa adecuada de los mismos fue la actuación u omisión del demandado, en este caso constituida por la publicación de la información impugnada.

De otra parte, nuestro Tribunal Supremo ha establecido que los tribunales apelativos no deben intervenir con la estimación de los daños que realicen los tribunales de instancia a menos que las cuantías concedidas sean ridículamente bajas o exageradamente altas. *Meléndez Vega v. El Vocero de PR*, supra. Asimismo, ha reconocido que "[a]unque la valoración de los daños puede generar múltiples criterios, lo cierto es que la decisión debe descansar —dentro de lo posible— en el juicio del juzgador de instancia, quien tuvo la oportunidad de ver la prueba de cerca y de examinar la credibilidad de los testigos". *Íd.*, citando a *Vázquez Figueroa v. ELA*, supra.

A pesar de que "la determinación o cuantificación de daños morales, tarea que ha sido descrita como uno de los 'desafíos más delicados que plantea hoy la tarea judicial', no debe descansar en datos materiales y prueba puramente objetiva". Por lo que, el demandante "debe proveer evidencia que sustente que realmente quedó afectado en su salud, bienestar y felicidad". *Meléndez Vega v. El Vocero PR*, supra; *Rivera v. SLG Díaz*, supra, págs. 431 y 432. Asimismo, el Tribunal Supremo de Puerto Rico ha señalado que "[d]e ordinario, una reclamación en concepto de angustias mentales requiere la presentación de prueba pericial y documental, tanto para probar la

validez de la reclamación como para que la parte adversa pueda defenderse adecuadamente". *Meléndez Vega v. El Vocero PR,* supra, citando a: *Berríos v. González et al.,* 151 DPR 327, 345 (2000).

De otra parte, por norma general, no debemos intervenir con la apreciación de la prueba del foro de instancia, cuando no fue presentada una transcripción de la prueba oral vertida durante el juicio. Esto implica que los tribunales apelativos deben rendir deferencia a la apreciación de la prueba que realiza un tribunal de instancia. *McConnell v. Palau*, 161 DPR 734, 750 (2004). Ahora bien, la doctrina de deferencia judicial no es de carácter absoluto, pues debe ceder ante las posibles injusticias que puedan acarrear unas determinaciones de hechos que no estén sustentadas por la prueba desfilada ante el foro primario. Así, como foro apelativo, podemos intervenir con la apreciación de la prueba oral que haga el foro primario, cuando actúe con pasión, prejuicio, parcialidad, o incurra en un error manifiesto al aquilatarla. *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011); *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894, 916 (2011).

Previo a discutir los señalamientos de error, es meritorio señalar que la señora Arroyo no presentó una transcripción de la prueba oral. Por ello, no podemos evaluar la apreciación de la prueba realizada por el foro primario. Así pues, debemos acoger las determinaciones de hechos realizadas por el foro primario en su totalidad y procederemos a evaluar la corrección de su aplicación en derecho.

Del expediente surge que, el 15 de febrero de 2022, las partes firmaron un *Contrato de Opción de Compra.*

Dicho *Contrato* indicaba que tendría una vigencia de 60 días, con extensiones de tiempo, según fueran necesarias. Posteriormente, las partes intentaron llegar a un acuerdo sobre el precio de venta y vigencia del contrato. Sin embargo, la apelante nunca firmó el *Addendum Final al Contrato de Opción Compraventa* por no estar de acuerdo con el término, dado que entendía el proceso con el Departamento de Vivienda tomaría más tiempo.

Luego de varias comunicaciones entre la apelante y la parte apelada, el 18 de abril de 2022, la señora Arroyo remitió un correo electrónico indicando que había recibido la elegibilidad de su caso. No obstante, el señor Ortiz le contestó "[l]a propiedad no esta en contrato, no se firmó ningún adendum, el dueño le dio la opción a otra persona, favor envíame la info para devolución del depósito de opción." Por ello, bajo frustración, la apelante publicó a través de su "*Facebook*" un mensaje de manera pública que había sido "estafada" al momento de comprar una casa, y junto al mensaje publicó una foto del señor Ortiz con su familia.

Ciertamente, la apelante basó su comentario ante la situación de enterarse que la propiedad por la cual entendía tenía un contrato vigente, había sido opcionada a otra persona. No obstante, dicha publicación fue negligente pues su contenido era falso. La señora Arroyo, no fue estafada, firmó un contrato el cual tenía una fecha específica para ejercer la opción de compra, y ésta venció. A su vez, el apelado se intentó comunicar con la apelante para devolverle el depósito dado.

Como consecuencia de la publicación, el señor Ortiz reclamó difamación, por el daño alegadamente

causado a su reputación. A su vez, solicitó indemnización por daños y angustias mentales sufridos a causa de la difamación.

Conforme surge de la *Sentencia* apelada, el apelado sufrió daños a su reputación, dado que, el señor Hernández -dueño y vendedor- al ver la publicación le cedió el contrato de la casa a otro corredor de bienes raíces para su venta. Por ello, el foro primario concluyó que procedía el pago de $3,330.00 por concepto de la comisión dejada de recibir por la venta de la casa. Así pues, evaluada la prueba, no encontramos razón para negar la deferencia sobre la determinación del impacto negativo que la publicación difamatoria tuvo sobre la reputación del señor Ortiz. El apelado sufrió un daño real como consecuencia de la publicación, dado que, perdió el negocio como *realtor* con el vendedor. Por todo lo cual, concurrimos con la determinación del foro primario al imponerle la cantidad de $3,330.00 ante la pérdida de un negocio.

En cuanto a la solicitud de daños por angustias mentales, el foro primario concedió la suma de $3,330.00. En vista de que la apelante no presentó la transcripción de la prueba oral, ni una exposición narrativa a esos efectos, hacemos referencia a la determinación de hechos emitida por el foro primario, la cual resaltó que, el señor Ortiz "[a]l ver la publicación el demandante se puso nervioso y triste. Llamó a varios colegas y al día siguiente llamó a su abogado". Si bien el señor Ortiz no presentó un perito para establecer sus daños por angustias mentales, lo declarado por él es suficiente para establecer que sufrió daños.

Reiteramos que como norma sentada los foros revisores no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos de los tribunales de primera instancia. *ELA v. SLG Negrón-Rodríguez*, supra, pág. 486. Esto responde al hecho de que es el juez sentenciador quien tuvo la oportunidad de recibir y apreciar la prueba oral presentada, de escuchar la declaración de los testigos y determinar su confiablidad. *Suárez Cáceres v. Com. Estatal Elecciones*, supra, pág. 67.

Por consiguiente, luego de examinar las determinaciones de hechos y conforme a la normativa jurídica antes expuesta, no vemos indicio alguno de que el foro *a quo*, en su apreciación de la prueba y en su determinación, haya incurrido en error manifiesto, prejuicio o abuso de discreción que amerite nuestra intervención. El Tribunal de Primera Instancia en el *Juicio*, escuchó y observó a los testigos y adjudicó credibilidad basándose en su observación y análisis. En consecuencia, no vemos razón alguna para intervenir con la apreciación de la prueba y la determinación que hizo el foro de primera instancia.

## IV.

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones